HAZEL WEBB, Plaintiff-Appellee, v. CHARLES MORGAN *et al.*, Defendants-Appellants.

Fifth District   No. 5—87—0599

Opinion filed October 7, 1988.—Rehearing denied November 4, 1988.

Stephen W. Thomson and Curtis L. Blood, both of Reed, Armstrong, Gorman, Coffey, Thomson & Gilbert, of Edwardsville, for appellant Harold Harris.

Roger C. Denton and Michael J. Weilmuenster, both of Kassly, Bone, Becker, Dix, Tillery & Reagan, P.C., of Belleville, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

On December 27, 1981, Hazel Webb, plaintiff, suffered injuries when she slipped and fell on ice in a mobile home park in Springfield, Illinois. The plaintiff subsequently brought suit in the circuit court of St. Clair County to recover damages from Harold Harris, the defendant, who was doing business as Vicksburg Mobile Home Park, for his alleged negligence in creating an unnatural accumulation of ice and snow on the park's common parking area, and from Charles Morgan, the codefendant and the plaintiff's brother, for his alleged negligence in failing to use reasonable care to keep the walkways on his property safe and in failing to warn the plaintiff of the dangerous condition of the walkway. The circuit court held a jury trial from May 18 through May 21, 1987. At the close of the plaintiff's case, the court entered a directed verdict in favor of the codefendant. The jury found the defendant negligent and found that his negligence caused 80% of the plaintiff's injuries. The jury determined that the plaintiff suffered damages of $101,350, and the trial court entered judgment for the plaintiff and against the defendant for $81,080. The defendant appeals. We affirm.

Robert Webb, the husband of the plaintiff; Kenneth and Pauline Brown, friends of the plaintiff; and the plaintiff drove from Belleville, Illinois, to Springfield on December 27, 1981, to visit the codefendant and his wife Clara Morgan. The codefendant rented and lived at lot number 20 in the Vicksburg Mobile Home Park in Springfield. The Webbs and the Browns arrived at the codefendant's home in the morning before noon, while the sun was shining and the temperature was in the mid-thirties Fahrenheit. The Webbs and the Browns stayed at the codefendant's home until about 5 p.m., when they received warnings of an impending snowstorm. When the group decided to leave, Mr. Webb retrieved his car, parked about 150 to 200 feet from the codefendant's home, and drove back to pick up the other members of his party. While walking to meet the car, the plaintiff slipped and fell on the driveway that served as a common parking area for the codefendant's home and three other mobile homes in the park. At the time of her fall, the plaintiff wore low-heeled shoes with rubber soles and apparently had no difficulty walking.

Prior to the plaintiff's fall, the defendant's sons, Eric and David Harris, plowed the snow off of the common parking area using a trac-

tor with a snow blade and piled the snow in mounds along the edge of the parking area. These mounds of snow had apexes of up to 2½ feet. Eric and David did not spread salt or cinders on the parking area. Eric and David plowed the snow on December 18, 1981, and again on or about December 20, 1981. Eric testified that he was aware that, after a rainfall, the water flowed downhill towards the parking area, and testified that he thought that the runoff from the snow would flow in the same direction. The codefendant testified that in December of 1981, the snow on the mounds would melt during the day when the sun was out and the water would then flow across the parking area and refreeze when the temperature fell during the night, causing a slick condition. Clara Morgan, the codefendant's wife, testified that she had complained to Mrs. McDevott, the woman who collected the rent, about the slick condition of the parking area before the plaintiff's slip and fall, but that the defendant had done nothing to remedy the situation. Kenneth Brown testified that it appeared to him that the snow on the mounds had melted and run down onto the common parking area, making it slick. The plaintiff testified that she fell because of this icy condition of the lot.

Richard Flaskamper, a municipal engineer, and Gary Mackey, the supervisor of road systems for the St. Clair County Highway Department, testified as expert witnesses for the plaintiff. Both men had many years of experience in snow removal. Each testified that the proper way to plow snow on a parking lot with a downhill grade is to plow from the top of the grade to the bottom in order to prevent the snow from alternately thawing, draining to the parking lot, and refreezing, which could create a hazardous condition. Gary Mackey testified that a major problem with snow removal is that the piled snow melts and refreezes, and that the only way to combat that problem is to either remove the snow to a new location or to treat the snow with salt and cinders. He testified that there are no standards for snow removal and that the primary consideration in snow removal is to create a safe means of travel for the public.

Fred Stone, Jr., a civil engineer and surveyor, testified that it was his expert opinion that the common parking area where the plaintiff fell had a downward slope of 2% and that water flowing down that parking area would have a tendency to collect and puddle in the area where the plaintiff fell. He stated that this accumulation of water is contrary to the natural flow in that area.

Counsel for the plaintiff introduced a weather report into evidence which showed that the temperature rose during the day and subsequently fell in the evening. This exhibit indicated that the tempera-

ture on that day ranged between a high of 41 degrees Fahrenheit and a low of 19 degrees Fahrenheit.

At the close of the plaintiff's evidence, the trial court granted the codefendant's motion for a directed verdict. During closing arguments, the plaintiff's counsel argued to the jury that the defendant caused the accident by negligently piling the snow so that the runoff from the piles ran downhill onto the parking area and froze. The jury found the defendant negligent and determined that his negligence caused 80% of the plaintiff's injuries. The jury determined that the plaintiff suffered damages of $101,350. The trial court then entered a judgment for the plaintiff and against the defendant for $81,080. The defendant appeals.

The defendant presents three issues for review: (1) whether the jury could find him liable as a matter of law, and if so, whether the plaintiff proved a *prima facie* case against him for the negligent removal of ice and snow; (2) whether the plaintiff joined the codefendant in good faith and with probable cause for the purpose of obtaining a judgment against him and not solely to fix venue in St. Clair County; and (3) whether the codefendant's alleged residence in East St. Louis, Illinois, made venue proper in St. Clair County.

The defendant initially contends that the jury could not find him liable for the plaintiff's injuries as a matter of law. He asserts that he was not negligent as a matter of law because he owed no duty to the plaintiff to remedy a natural accumulation of ice and snow. He contends that even if this court holds otherwise, the evidence, viewed most favorably to the plaintiff, fails to show that he acted negligently. He also argues that the plaintiff failed to prove that his conduct was the proximate cause of her injuries, because she failed to prove that her fall was due to the presence of ice on the pavement.

■ The general rule in Illinois is that a property owner owes no common law duty to remove natural accumulations of ice and snow from common areas which remain under his control and thus cannot be found liable for injuries resulting from a natural accumulation of ice and snow. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1004, 365 N.E.2d 80, 84.) However, when the property owner chooses to remove ice and snow, he is charged with the duty of exercising ordinary care in the accomplishment of that task. (*Sims v. Block* (1968), 94 Ill. App. 2d 215, 222, 236 N.E.2d 572, 575.) The property owner, then, has no duty to remedy a natural accumulation of ice and snow. His duty is to prevent an unnatural accumulation on his property, whether that accumulation is the direct result of the owner's clearing of the ice and snow, or is caused by design deficiencies that promote unnatu-

ral accumulations of ice and snow. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 145, 407 N.E.2d 1031, 1033.) The plaintiff has the burden of affirmatively proving that the ice and snow on which she fell was an unnatural accumulation caused by the defendant. *Bedeker v. School Directors of District No. 40* (1981), 92 Ill. App. 3d 618, 620, 416 N.E.2d 68, 69.

Mere removal of snow, which leaves a natural accumulation of ice on the surface, does not of itself constitute negligence. (*Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55, 58, 241 N.E.2d 222, 224.) "The general assumption is that the industry displayed by citizens removing snow after a snowfall is desirable if not necessary." (*Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 137, 115 N.E.2d 288, 290, quoting *Riccitelli v. Sternfeld* (1952), 349 Ill. App. 63, 67, 109 N.E.2d 921, 922.) Each case involving natural or unnatural accumulations of ice and snow turns largely on its own facts rather than on the manner in which the rule of law is stated. (*Sims v. Block* (1968), 94 Ill. App. 2d 215, 221, 236 N.E.2d 572, 575.) The courts must thus consider on a case-by-case basis the issue of what is or is not an unnatural or artificial accumulation of ice and snow.

■ We believe that from the record in this case, the jury could determine that the icy parking lot was the product of an unnatural accumulation caused by water running off snow from the banks onto the common parking area and refreezing. (See *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 173 N.E.2d 534; *Sims v. Block* (1968), 94 Ill. App. 2d 215, 236 N.E.2d 572.) The evidence indicates that the defendant caused the unnatural accumulation when his sons pushed the snow with a tractor to the uphill side of the parking area, which created large piles of snow, and that the occasional warm weather caused the snow to thaw, drain across the lot, and refreeze when the temperature fell. The defendant refused to spread salt and cinders on the ice to prevent persons from falling on the parking lot, even after the codefendant's wife warned his agent, Mrs. McDevott, of the slippery condition of the lot. From this evidence a reasonable jury could determine that Eric Harris, the defendant's son, was aware of the nature of the slope of the lot and that the defendant thus knew through his agents about the hazards of this unnatural accumulation of snow. We thus hold that the jury had sufficient evidence to determine that the defendant acted negligently.

As to the defendant's contention that the plaintiff failed to prove that his conduct was the proximate cause of her injuries, because she failed to prove that her fall was due to the presence of ice on the pavement, we hold from the evidence that a reasonable jury could de-

384

termine that the defendant's creation of the unnatural condition was the proximate cause of the plaintiff's injuries, since the plaintiff testified that she slipped and fell because of the icy condition of the parking area. We thus affirm the judgment of the trial court on this issue.

The defendant's second contention is that we must reverse the judgment of the circuit court because the plaintiff did not join the codefendant in good faith and with probable cause for the purpose of obtaining a judgment against him, but solely for the purpose of fixing venue in St. Clair County.

■ Section 2—101 of the Code of Civil Procedure (the Code) prescribes:

> "Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Ill. Rev. Stat. 1985, ch. 110, par. 2—101.)

Section 2—105 of the Code prescribes:

> "In any action involving defendants residing in different counties in which venue is based on residence and an appropriate and timely motion to transfer is made by a defendant not residing in the county, the overruling of the motion is not ground for reversal if he or she proceeds to trial on the merits, unless he or she renews the motion at the close of all the evidence and it appears from the record or the evidence that the defendant residing within the county was joined without probable cause and not in good faith for the purpose of obtaining a judgment against him or her but solely for the purpose of fixing venue in that county." Ill. Rev. Stat. 1985, ch. 110, par. 2—105.

■ A trial court cannot arbitrarily deny the defendant's specific objection to venue. (*Winn v. Vogel* (1952), 345 Ill. App. 425, 430-31, 103 N.E.2d 673, 676.) Proper venue is an important privilege given great weight. (*Blakey v. Commonwealth Edison Co.* (1977), 52 Ill. App. 3d 454, 456, 367 N.E.2d 529, 531.) For a court to permit a plaintiff to bring an action against a defendant in a forum that would not support venue "would violate the intent of the legislature to insulate defendants from being sued in a faraway place where he [*sic*] neither resides nor carries on any kind of activities." *American Oil Co. v. Mason* (1971), 133 Ill. App. 2d 259, 261, 273 N.E.2d 17, 18.

The defendant contends that the plaintiff filed the suit against the codefendant simply to fix venue in St. Clair County. He argues that the codefendant was not joined in good faith because the plaintiff failed to present any evidence to show that the accident occurred on the codefendant's, and not the defendant's, property; that all the witnesses who testified during the trial stated that the accident occurred in a common parking area, and not on the codefendant's property; and that at the time of filing suit, the plaintiff was certain she fell in the middle of the common parking area.

■ The joinder of a resident defendant "with probable cause" means grounding the action on a reasonable belief that the claim on which the suit is based is valid. (*Green v. Unity Container Corp.* (1955), 7 Ill. App. 2d 215, 221, 129 N.E.2d 458, 462.) In the case of *Novak v. Thies* (1980), 89 Ill. App. 3d 991, 412 N.E.2d 666, the appellate court rejected the defendant's claim that the plaintiff's failure to introduce evidence against the resident defendant established a lack of good faith. In its opinion, the court stated that the plaintiff's failure to introduce evidence against the resident defendant

> "could have been the result of a flexible trial strategy by plaintiff's counsel. During the course of a trial, depending on the testimony elicited and the development of the evidence, counsel may wish to forego the introduction of direct evidence against a particular party where multiple parties are involved. This does not mean that the particular party was joined in bad faith.
>
> Also, the mere direction of a verdict in favor of a particular defendant does not demonstrate that the party was joined as a defendant in bad faith." *Novak v. Thies* (1980), 89 Ill. App. 3d 991, 993, 412 N.E.2d 666, 668.

■ We are unable to hold that the trial court erred in determining that the plaintiff properly brought this action in St. Clair County in good faith and for the purpose of obtaining a judgment against the codefendant. The evidence indicates that the plaintiff joined the codefendant because some dispute existed over whether the accident occurred on the codefendant's property. Count II of the plaintiff's amended complaint alleged that the plaintiff slipped and fell on property occupied by the codefendant. Some evidence existed to support this view. David Harris, the defendant's son, testified at trial that he learned from Clara Morgan that the accident occurred on the codefendant's property. The plaintiff's failure to produce evidence against the codefendant, and the fact that a verdict was directed for that codefendant, is not dispositive on the issue of lack of good faith (*Novak v. Thies* (1980), 89 Ill. App. 3d 991, 993, 412 N.E.2d 666, 668), and in

this instance we cannot hold that the trial court's determination that the plaintiff properly joined the codefendant in good faith and for the purpose of obtaining a judgment against him was in error.

The defendant's third and last contention is that the trial court erred in denying his motion to transfer venue from St. Clair County to Sangamon County. The defendant contends that venue was improper in St. Clair County because the codefendant abandoned his St. Clair County real estate as a residence and established a permanent residence in Sangamon County.

■ Section 2—101 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—101) prescribes that the plaintiff must commence every action, except as otherwise provided in the Act: (1) in the county of residence of any defendant who is joined in good faith and with probable cause; or (2) in the county in which the transaction, or some part thereof, occurred. (Ill. Rev. Stat. 1985, ch. 110, par. 2—101.) The statute does not define the word "resident," nor does it provide for dual or multiple residences. In Illinois, cases construing the term "resident" have stated that the meaning varies with the content and the subject matter of the case, but that it is generally understood to include intent and permanency of abode in addition to mere physical presence. The intent of the party whose residence is in question is the controlling factor. (*Cincinnati Insurance Co. v. Argubright* (1986), 151 Ill. App. 3d 324, 330, 502 N.E.2d 868, 872.) Intent is gathered primarily from the acts of a person. *Stein v. County Board of School Trustees* (1968), 40 Ill. 2d 477, 480, 240 N.E.2d 668, 669; see also 92 C.J.S. *Venue* §110, at 814-15 (1955) ("[w]hether a stay is temporary or permanent is a question of intention to be proved by declarations and acts. Whether a place of abode is a person's residence depends on the facts and circumstances, in the sense that they disclose intent").

■ Once a residence is established, it is presumed to continue, and the burden of proof in such cases rests on the party who attempts to establish that a change in residence occurred. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 654-55, 458 N.E.2d 637, 642.) To establish a new residence, the person must physically move to a new home and live there with the intention of making it his permanent home, and only when an abandonment has been proved does the person lose residence. *Hatcher v. Anders* (1983), 117 Ill. App. 3d 236, 239, 453 N.E.2d 74, 77.

In his deposition, the codefendant stated that he had been born and raised in East St. Louis; that he had lived at 2702 Harvard, East St. Louis, for the past 20 years; that he had paid taxes on the home at that address; and that he had stayed at that address within two to

three months of the deposition. The codefendant asserted that he sub-sequently moved to Springfield, Illinois, and to Mission, Texas, on a temporary basis to find work.

The defendant presents numerous arguments to support his position that the codefendant did not reside in East St. Louis. The defendant contends that the codefendant's deposition testimony does not support a finding that the codefendant resided in East St. Louis when one considers that: (1) at the time of the accident, the codefendant had occupied a mobile home at the Vicksburg Mobile Home Park in Springfield since 1979; (2) the codefendant's Illinois driver's license, issued in December of 1979, contained an address in Springfield; and (3) when that license expired in 1982, the codefendant obtained a driver's license from the State of Texas.

The defendant filed a motion to transfer venue on January 23, 1986, and accompanied this motion with photographs taken by H. C. Boyd, a private investigator, on August 28, 1985, indicating that the codefendant had boarded up his house in East St. Louis. According to affidavits executed by utility company employees, the codefendant's East St. Louis house had been without gas since 1982; had been "previously disconnected"; and had been without water, sewage, or electricity since 1973. The defendant contends that a residence should, at a minimum, have water, electricity, and windows and that it should be habitable. William Knight, who lives at 2700 Harvard in East St. Louis, adjacent to the codefendant's house, executed an affidavit on September 30, 1985, stating that the codefendant had not occupied the house in over 10 years. The defendant accompanied Knight's affidavit with additional photographs showing the dilapidated and boarded-up condition of the structure. The codefendant was in St. Clair County for three months in 1984, and the defendant contends that the codefendant's failure to reside in his house in East St. Louis during this period indicates a lack of intent on his part to reside there. At trial, when the codefendant was asked where he lived at the time of the accident, he stated that he lived at 20 Vicksburg Place in Springfield and gave no other address. On April 20, 1983, the codefendant's counsel filed a motion to transfer venue of the plaintiff's cause from St. Clair County to Sangamon County on the ground that the codefendant was a resident of Sangamon County on or about the date of the accident, and "[t]hat at no time mentioned in plaintiff's [c]omplaint was [the codefendant] a resident of St. Clair County, Illinois."

The defendant's counsel mistakenly contended during oral argument that even if the codefendant intended to move back to East St.

Louis, he would not be a resident of St. Clair County, since the codefendant's subjective intent is irrelevant for purposes of establishing venue. However, he also stated that the fact that the codefendant chose not to look for work in East St. Louis indicated a lack of intent to reside there.

The plaintiff contends that the codefendant's attorney, without the knowledge of the codefendant, filed the motion to transfer venue from St. Clair County on the ground that the codefendant was a resident of Sangamon County, and is thus of little significance to the issue of where the codefendant resides. The plaintiff notes that the codefendant executed an affidavit on March 11, 1983, stating:

> "1. My name is Charles Morgan, and I have been a resident of St. Clair County for 72 years.
>
> 2. Since 1953, I have lived at my house at 2702 Harvard, East St. Louis, St. Clair County, Illinois.
>
> 3. That due to lack of work in the St. Clair County Area, I have temporarily moved to Springfield, Illinois, in order to seek employment, but have continuously maintained my St. Clair County residence.
>
> 4. That I have paid taxes on the real estate at 2702 Harvard, East St. Louis, St. Clair County, Illinois, for the past 20 years and continue to do so at the present time."

The plaintiff thus contends that venue was properly had in St. Clair County, because the codefendant legally resided in East St. Louis and did not change residences when he traveled to Springfield, Illinois, and Mission, Texas, in a search for employment.

■ We are unable to hold that the trial court erred in finding that the defendant failed to meet his burden of proving that the codefendant was not a resident of East St. Louis. The codefendant could only reside in one place, and it is not unreasonable to conclude that he maintained that residence in St. Clair County. The codefendant stated on numerous occasions that he was a resident of St. Clair County. He was born and raised in East St. Louis, and thus until he established a residence elsewhere, he was a resident of St. Clair County. The evidence indicates that the codefendant was a transient who moved from place to place searching for employment. After leaving East St. Louis, he lived for a time in a mobile home in Springfield, and moved on at least one occasion to Texas.

The defendant asserts that as an alternative to finding that the codefendant was a resident of St. Clair County, the trial court should have found that he was a resident of Sangamon County. The evidence indicates, however, that the codefendant did not intend to remain per-

manently in Sangamon County but intended to return to East St. Louis as soon as he could afford to live there.

The admittedly dilapidated condition of the codefendant's house in East St. Louis does not necessarily indicate that the codefendant did not have the intent to return to the house, fix it up, and live in it, since the codefendant had paid his taxes each year for over 20 years on that residence and repeatedly expressed his intention to return. The codefendant's apparent unwillingness to search for work in East St. Louis is not dispositive of the issue of whether he intended to maintain his residence there, since the codefendant could reasonably determine that his opportunities for employment were greater in Springfield and in Mission, Texas, than they were in East St. Louis.

Since the only alternative the defendant presents to the plaintiff's contention that the codefendant resided in East St. Louis is that the codefendant resided in Springfield, but the evidence presented by the defendant lacks any indication of an intent on the part of the code-fendant to permanently reside there, we are unable to hold that the trial court's determination was in error.

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

LEWIS and CALVO, JJ., concur.