Schwalbach, et al. v. Millikin Kappa Sigma Corp., et al.

(text box: 1) NO. 5-03-0515

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

JOHN SCHWALBACH and BRENDA ROOSEVELT, )  Appeal from the

Individually and as Special Administrators of the )  Circuit Court of

Estate of Nicholas Schwalbach, Deceased, and as )  Madison County.

Parents and Next Friends of Alex Roosevelt, Catherine )

Roosevelt, and Sophia Schwalbach, Next of Kin of )

Nicholas Schwalbach, Deceased, )

)

     Plaintiffs-Appellees, )

)

v. )  No. 01-L-392

) 

MILLIKIN KAPPA SIGMA CORPORATION, )

GAMMA-BETA PRIME CHAPTER OF KAPPA )

SIGMA FRATERNITY, KAPPA SIGMA )

FRATERNITY, HARRINGTON SIGNAL, INC., )

POTTER ELECTRIC SIGNAL COMPANY, DALE )

SCHUERMAN, and SCHUERMAN ELECTRONICS, )  Honorable Nicholas G. Byron

)  and Honorable A. A. Matoesian,

     Defendants-Appellants. )  Judges, presiding.

________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiffs, Brenda Roosevelt and John Schwalbach, are the parents of Nicholas Schwalbach (Nick), who died in a fire in his university fraternity house.  The defendants appeal an order denying their motions to transfer venue in the plaintiffs' wrongful death action from Madison County (the residence of plaintiff Brenda Roosevelt and the county in which Nick Schwalbach's estate is being administered) to Macon County (where the incident occurred) on grounds of 
forum non conveniens
.  We affirm.

On June 8, 2000, a fire broke out in the Kappa Sigma fraternity house on the campus of Millikin University.  Nick Schwalbach was asleep in his third-floor bedroom when the fire began.  He awoke when heat and smoke from the fire reached the third floor.  He attempted to escape but was trapped.  Nick died that day from smoke inhalation.

On February 27, 2001, the Madison County circuit court entered an order appointing Nick's parents, Brenda Roosevelt and John Schwalbach, as special administrators of the estate of Nicholas Schwalbach.  That day, the plaintiffs filed their initial wrongful death complaint naming Millikin Kappa Sigma Corp., the Gamma-Beta Prime Chapter of Kappa Sigma Fraternity, and the Kappa Sigma Fraternity as defendants (collectively referred to as the fraternity).  The plaintiffs later filed an amended complaint adding Harrington Signal, Inc. (Harrington Signal), the manufacturer of a fire alarm that they alleged did not function properly on the morning of the fire, contributing to Nick's death.  The fraternity and Harrington Signal each filed a motion to transfer the cause to Macon County, contending both that venue was not proper in Madison County and that Macon County was a more convenient forum.  The court denied the motions in February 2002, and the defendants appealed.     

On May 29, 2002, while that appeal was pending, the plaintiffs filed another wrongful death petition in Madison County, naming as defendants Potter Electric Signal Company (Potter) (which they had learned through discovery might have been the manufacturer of the alarm), Schuerman Electronics (the distributorship that sold the alarm to the fraternity), and Dale Schuerman (the owner of Schuerman Electronics and the individual who installed the alarm at the fraternity house).  On February 19, 2003, this court reversed the trial court's order denying the original defendants' motions to transfer venue.  
Schwalbach v. Millikin Kappa Sigma Corp.
, No. 5-02-0217 (2003) (unpublished order pursuant to Illinois Supreme Court Rule 23 (166 Ill. 2d R. 23)).  We held that venue was not proper in Madison County because none of the original defendants were doing business in Madison County within the meaning of the venue statute (735 ILCS 5/2-101 (West 2000)). 

On March 12, 2003, the plaintiffs filed a motion to consolidate their suit against the fraternity and Harrington Signal with their suit against Potter, Schuerman Electronics, and Dale Schuerman.  The trial court entered an order consolidating the two cases on April 11, 2003.  On April 25, the fraternity filed a renewed motion to transfer venue to Macon County on grounds of 
forum non conveniens
.  On July 23, 2003, the court denied all the pending motions to transfer.  

The defendants filed petitions for leave to appeal pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)).  On October 2, 2003, we denied their petitions for leave to appeal.  However, on January 28, 2004, the Illinois Supreme Court entered supervisory orders directing us to vacate our October 2 order and consider the defendants'
 forum non conveniens
 arguments on their merits.  
Schwalbach v. Millikin Kappa Sigma Corp.
, 207 Ill. 2d 627, 628, 628, 802 N.E.2d 257, 258, 258 (2004) (supervisory orders).  

The fraternity and Harrington Signal filed separate briefs in this case.  Potter adopted the briefs of both the fraternity and Harrington Signal.  The defendants who filed briefs made essentially identical arguments.  Thus, we will refer to the defendants' arguments collectively.  We now turn to the merits of the defendants' appeal.

The defendants contend that the court abused its discretion in denying their motions to transfer venue to Macon County.  The trial court enjoys broad discretion in ruling on a 
forum non conveniens 
motion, and we will not reverse its order absent an abuse of that discretion.  
First American Bank v. Guerine
, 198 Ill. 2d 511, 515, 764 N.E.2d 54, 57 (2002); 
Boner v. Peabody Coal Co.
, 142 Ill. 2d 523, 527-28, 568 N.E.2d 883, 885 (1991).  Applying this standard, we disagree with the defendants' contention.  

Forum non conveniens 
is an equitable doctrine under which a court may, in exceptional circumstances, decline to exercise jurisdiction over a case if the defendant can show that another forum would be more convenient.  
Guerine
, 198 Ill. 2d at 515, 764 N.E.2d at 57.  The same body of law governs both motions to dismiss on the grounds that a more convenient out-of-state forum exists (interstate motions) and motions to transfer to a more convenient forum within Illinois (intrastate motions).  
Dawdy v. Union Pacific R.R. Co.
, 207 Ill. 2d 167, 176, 797 N.E.2d 687, 696 (2003).  

In deciding whether to grant a 
forum non conveniens 
motion, courts must weigh all the relevant factors, both public and private.  The private-interest factors to be considered include (1) the convenience of the parties, (2) access to witnesses and sources of evidence, and (3) all other practical problems that make trying a case expeditious, easy, or inexpensive.  The last factor includes such considerations as the cost of securing the attendance of willing witnesses, the availability of service of process to secure the attendance of unwilling witnesses, and the ability to view the location where the events at issue took place (if appropriate).  
Guerine
, 198 Ill. 2d at 516, 764 N.E.2d at 58.  The public-interest factors include (1) the interest in deciding localized controversies locally, (2) the unfairness of imposing the burden of jury duty or the expense of a trial on a county with no connection to the controversy, and (3) the relative congestion of the dockets in the proposed alternative fora.  
Guerine
, 198 Ill. 2d at 516-17, 764 N.E.2d at 58.  Trial courts are to consider all these interests and determine whether, on the whole, they 
strongly
 favor a transfer or dismissal.  
Guerine
, 198 Ill. 2d at 518, 764 N.E.2d at 59.

No one factor is decisive or should be accorded primary emphasis in the analysis.  
Dawdy
, 207 Ill. 2d at 180, 797 N.E.2d at 698.  The plaintiff's choice of forum is, however, an important consideration always entitled to some deference.  Where the plaintiff's choice of forum is neither the situs of the events at issue in the litigation nor the plaintiff's home county, it is entitled to less deference than it normally merits.  
Dawdy
, 207 Ill. 2d at 173-74, 797 N.E.2d at 694.  While courts do not condone "forum-shopping", we recognize that both plaintiffs and defendants engage in the practice with equal fervor.  
Dawdy
, 207 Ill. 2d at 174, 797 N.E.2d at 694; 
Guerine
, 198 Ill. 2d at 521, 764 N.E.2d at 61.  Thus, the plaintiff's substantial right to choose the forum for the action is always an important consideration (
Guerine
, 198 Ill. 2d at 518, 764 N.E.2d at 59) even though it does not always outweigh the other factors (
Guerine
, 198 Ill. 2d at 521, 764 N.E.2d at 61).  

We first address what we consider to be the two most relevant factors under the facts before us–the plaintiffs' choice of forum and the respective interests of Macon and Madison Counties in resolving this conflict locally.  As previously noted, the plaintiffs' chosen forum is always entitled to at least some deference.  How much deference depends on whether it is the plaintiffs' home county.  In this case, the plaintiffs chose Madison County, which is Brenda Roosevelt's home county, while the defendants argue that Macon County, which is John Schwalbach's home county, is the more convenient forum.  

In determining the deference to be accorded the plaintiffs' choice, we find it helpful to consider the rationale behind the rule.  When plaintiffs choose their home county as a forum for their suit, it is reasonable to assume that they have done so because their home county is a convenient forum.  
Dawdy
, 207 Ill. 2d at 173, 797 N.E.2d at 694; 
Guerine
, 198 Ill. 2d at 517, 764 N.E.2d at 59.  It is precisely because this assumption loses much of its force when a plaintiff chooses a distant county that such a choice merits less deference.  
Dawdy
, 207 Ill. 2d at 173-74, 797 N.E.2d at 694.  Because a defendant cannot argue 
forum non conveniens 
on the grounds that the forum is inconvenient to one of the plaintiffs who chose that forum (see 
Guerine
, 198 Ill. 2d at 518, 764 N.E.2d at 59), we do not find it particularly significant that John Schwalbach lives in the county the defendants argue is the more convenient forum.  (We note that in assessing the two counties' comparative interests in resolving the litigation, this fact will have some relevance, but we do not think it should have any impact on the deference to be accorded to the plaintiffs' choice of forum.)

The defendants argue, however, that in a wrongful death action such as this, the plaintiffs are suing primarily in a representative capacity.  Thus, the defendants contend, the plaintiffs' choice of Brenda Roosevelt's home county as a forum for their suit is entitled to little if any deference.  In support of their contention, they cite
 Moore v. Chicago & North Western Transportation Co.
, 99 Ill. 2d 73, 457 N.E.2d 417 (1983).  There, the plaintiff brought a wrongful death action in Cook County after his daughter had been killed in a car-train collision in Wisconsin.  
Moore
, 99 Ill. 2d at 78, 457 N.E.2d at 419.  In concluding that the trial court abused its discretion in denying the defendant's motion to dismiss on grounds that Wisconsin was the more convenient forum, the Illinois Supreme Court stated: "In light of the representative capacity in which plaintiff here acts, his residency [in Cook County] has no relationship to the litigation except as a nominal party.  Thus, 
under the facts of this case
, plaintiff's choice of Cook County, Illinois, is of minimal significance."  (Emphasis added.)   
Moore
, 99 Ill. 2d at 79, 457 N.E.2d at 420.  

We find an examination of the context in which the Illinois Supreme Court made this pronouncement illuminating.  In 
Moore
, it was undisputed that the decedent was a resident of Wisconsin at the time of her death and that Wisconsin was the situs of the accident.  It was also undisputed that her surviving children, the paramedics and physicians who treated her, and all the potential witnesses identified by either party lived in Wisconsin.  Furthermore, the parties agreed that Wisconsin law applied to the dispute.  
Moore
, 99 Ill. 2d at 78-79, 457 N.E.2d at 419-20.  

Most significantly, the plaintiff in 
Moore
 was appointed as the administrator of the decedent's estate by a Wisconsin court.  
Moore
, 99 Ill. 2d at 78, 457 N.E.2d at 419.  If he wished to settle his wrongful death claim, he would require authorization from the Wisconsin court administering the decedent's estate.  He would also have to account to that court for any sums received, through either a settlement or a judgment, in the wrongful death action.  
Moore
, 99 Ill. 2d at 79, 457 N.E.2d at 420.  Although the supreme court does not say so, we think these facts mitigate against the usual assumption that the plaintiff's home forum was chosen for its convenience.

The circumstances present here are quite different.  For one thing, the Madison County court would not be required to apply the law of another state.  Further, as we will discuss in more detail later, there are witnesses scattered throughout the state and around the country.  Most importantly, however, the plaintiffs are not suing on behalf of an out-of-state resident with no ties of his own to Madison County.  Rather, they are suing on behalf of a 20-year-old university student who had strong ties to both Madison and Macon Counties.  

Naturally, the plaintiffs argue that Nick was a resident of Madison County, while the defendants contend that he was a resident of Macon County.  Both sides support their contentions with evidence in the record from which we might try to infer that Nick regarded one place or the other as "home".  The defendants point to the allegation in the plaintiffs' complaint that Nick "was a resident of" the Kappa Sigma fraternity house when the fire that killed him erupted (conveniently overlooking the fact that the complaint also alleges that Nick was a resident of Madison County prior to his death).  The plaintiffs point to W-2 forms on which Nick gave Brenda Roosevelt's Glen Carbon address as his home address and an email he sent to his father the day before the fire stating that he was going to go "home" to Glen Carbon for the weekend.  

Illinois courts generally construe the term "resident" to mean the place where an individual intends to live on a permanent basis.  The subjective intent of the person whose residence is at issue controls the determination.  
Webb v. Morgan
, 176 Ill. App. 3d 378, 386, 531 N.E.2d 36, 41 (1988).  Obviously, Nick could not have intended to remain in a university fraternity house on a permanent basis.  Such housing is, by definition, temporary.  Perhaps he enjoyed living in Decatur and hoped to remain there upon graduation; perhaps he hoped to return to Glen Carbon, where he had grown up and still had friends.  Perhaps he hoped to move elsewhere.  As a practical matter, most 20-year-old university students do not know where they will live on a permanent basis after graduation.  Fortunately, however, we need not ascertain Nick's subjective intent in order to determine his residence.  Once a residence is established, it is presumed to continue, and a person only establishes a new residence if that person physically moves to a new home and lives there intending to make it his permanent home.  
Webb
, 176 Ill. App. 3d at 386, 531 N.E.2d at 41.  Unless such a change of residence has been established, a person does not lose his original residence.  
Webb
, 176 Ill. App. 3d at 386, 531 N.E.2d at 41.  Prior to attending college, Nick unquestionably resided with his mother, Brenda, in Glen Carbon.  Thus, he was a Madison County resident at that time.  For the reasons discussed, we do not think the record contains any evidence to demonstrate that Nick had acquired a new residence.  He was thus a Madison County resident at the time of his death.

Quite unlike 
Moore
, we are faced here with representative plaintiffs who have chosen to sue 
in the decedent's home county
.  Nick's estate is being administered in Madison County, which is the proper forum for that proceeding (see 755 ILCS 5/5-1 (West 2000)).  As previously noted, the supreme court in 
Moore
 pointed to some of the problems posed by maintaining a wrongful death action in a forum other than the forum that was administering the decedent's estate.  Here, unlike there, the plaintiffs will not have to seek authorization from a distant court to settle with the defendants, nor will they have to account to that court for any recovery.  The factors that made the plaintiff's choice of his home forum in 
Moore
 "of minimal significance" are not present here.  Thus, we find that the plaintiffs' choice of forum is entitled to substantial deference and that a transfer is not warranted unless the defendants can show that the other factors greatly outweigh the plaintiffs' interest in choosing a forum. 

The other most relevant factor is the comparative interests of the parties' chosen forums in resolving the litigation.  The defendants argue that Macon County, as the situs of the fire, has a strong interest in resolving an inherently localized conflict.  They argue that Macon County's interest is particularly strong because Nick died in a fire.  This, they argue, implicates the enforcement of local fire codes and building codes.  They also argue that Macon County's interest in keeping the campus of Millikin University safe is particularly strong in light of the dominant role the university plays in the local economy.  We find many of these points persuasive.  However, while we agree that Macon County's interest in the litigation is quite strong, we also believe that the defendants overstate the extent to which the controversy is inherently local in flavor and grossly understate the interest Madison County also has in resolving the conflict.  

Millikin University is a private, four-year university providing education to students from all over the state and country.  Perhaps the people with the strongest interest in making sure Millikin University's campus remains safe are its current and future students and their parents, who are scattered throughout Illinois and the rest of the country.  This does not negate Macon County's interest in resolving the issues presented.  Macon County has a strong interest in the safety of Millikin University students while they make Macon County their temporary home.  As the defendants contend, many of these students are actually from Macon County and many remain there after graduation.  Moreover, localities have an interest in protecting the safety of even visitors who are just passing through.  Further, as the defendants argue, Macon County has an interest in the enforcement of local building codes and fire regulations, which are implicated in the instant action.  These interests are undeniably strong.  However, the fact that the fire occurred on the campus of a university primarily catering to temporary residents of Macon County makes the controversy somewhat less local in flavor than it might have been if the fire had occurred, for example, in an apartment building housing mainly permanent Macon County residents.  It is also worth noting that the plaintiffs' complaint contains claims for product liability, alleging that the fire alarms in the Kappa Sigma house did not function properly.  The Illinois Supreme Court has recognized that product liability claims are not inherently local in nature, even when brought in conjunction with claims for negligence involving more localized incidents.  See 
Guerine
, 198 Ill. 2d at 525, 764 N.E.2d at 63.

The defendants discount Madison County's interest in resolving the litigation, arguing that Macon County's interest in the litigation "trumps any general interest arguably held by Madison County".  We find this argument unduly dismissive of Madison County's very legitimate interest in the litigation.  Nick was a Madison County resident.  Madison County's interest in providing a forum in which his claim can be resolved is far more tangible than the kinds of "general interest" courts typically find too limited to support venue in a forum.  See, 
e.g.
, 
Dawdy
, 207 Ill. 2d at 182-83, 797 N.E.2d at 699 (finding that the fact that the defendant railroad conducted business in Madison County and some of the witnesses worked there provided the forum with too tenuous an interest in the litigation where the plaintiff was a nonresident and the accident occurred elsewhere); 
Washington v. Illinois Power Co.
, 144 Ill. 2d 395, 403, 581 N.E.2d 644, 647 (1991) (noting that any county to which the utility company defendant provides service has some interest in the litigation but finding such interest insufficient where the plaintiff was a nonresident and the accident occurred elsewhere).

Moreover, the defendants' arguments overlook the fact that, while this action clearly implicates Macon County's interest in enforcing its fire and building regulations and keeping the campus of Millikin University safe, it is primarily about redressing the wrong alleged by these plaintiffs.  Both counties have an interest in providing a forum to Nick's surviving family members (his parents and siblings live in both counties), but it is Madison County that has the stronger interest in providing a forum to resolve 
Nick's
 claim.  On the whole, we find that this factor favors Macon County, although not to the overwhelming degree the defendants suggest.

We next consider the remaining public-interest factors.  Those include the unfairness of imposing the burden of jury duty and the expense of a trial on a county with no connection to the controversy and the relative congestion of the dockets in the alternative fora.  As previously noted, both counties have substantial connections to this litigation.  It would not be unfair to impose the burden of jury duty or the expense of a trial on either forum.  This factor thus favors neither forum.  

As far as the relative court congestion, the defendants argue that Madison County is the more congested forum, pointing to a statistical summary of Illinois courts which shows that 3,545 civil jury cases involving more than $50,000 were pending in Madison County in 2000 while only 282 such cases were pending in Macon County.  Administrative Office of the Illinois Courts, 2000 Annual Report of the Illinois Courts, Statistical Summary 18, 21.  The plaintiffs point to statistics from the 2002 Annual Report of the Illinois Courts showing that the average time from filing to verdict in Madison County at that time was 26.7 months while the average time in Macon County was 28.8 months.  Administrative Office of the Illinois Courts, 2002 Annual Report of the Illinois Courts, Statistical Summary 56.  We believe that the statistics given by the plaintiffs provide a more relevant assessment of the congestion than the raw numbers of cases of one specific type that were pending at a given point in time.  Obviously, the more populous a county, the more cases that will be filed there.  If a more populous county also has more resources in the court system so that the cases can be heard as quickly as–or perhaps even more quickly than–those filed in a less populous county, its dockets can hardly be said to be more crowded than those in the less populous county, even though more cases are filed.  On average, it takes two months longer for a case to go from filing to verdict in Macon County than in Madison County.  Thus, this factor slightly favors Madison County.

We next turn to the relevant private-interest factors.  Those are the convenience of the parties, access to witnesses and other sources of evidence, and all other practical considerations that make trying a case easy, expeditious, or inexpensive.  

With respect to the convenience of the parties, the burden is on the defendants to demonstrate that the plaintiffs' chosen forum is inconvenient to them and that another forum is more convenient to all the parties.  
Dykstra v. A.P. Green Industries, Inc
., 326 Ill. App. 3d 489, 493, 760 N.E.2d 1034, 1037-38 (2001).  The defendants have failed to meet this burden.  Conspicuously absent from both of the briefs submitted by the defendants is any argument that Madison County was an inconvenient forum for the defendants as parties.  Furthermore, even if the defendants had not waived a consideration of any claimed inconvenience to them of a Madison County trial (see 188 Ill. 2d R. 341(e)), we find that they failed to meet their burden on this issue in the trial court as well.  The only defendant who argued to the trial court that the Madison County forum would be inconvenient was Dale Schuerman, the proprietor of Schuerman Electronics.  At the 
forum non conveniens 
hearing, his attorney explained to the court that Schuerman Electronics was a sole proprietorship and that only Schuerman and his son performed service calls to customers in the Decatur area.  Because there were no other employees to cover for Schuerman, attending a Madison County trial would be burdensome to him.  Counsel for Schuerman and Schuerman Electronics, however, adopted the arguments set forth in the briefs of Harrington Signal and the fraternity, which contain no similar arguments.  (Harrington Signal does argue that any of its employees required to be 
witnesses 
would need to travel further from its Moline, Illinois, headquarters to Madison County than to Macon County, however.)

Moreover, from the evidence in the record, it appears that Macon County is likely the more convenient forum for two of the four separate defendants while Madison County is more convenient for the other defendants and the plaintiffs.  The Millikin University chapter of the Kappa Sigma Fraternity was disbanded after the fire.  The national Kappa Sigma Fraternity organization has its headquarters in Virginia.  Any representatives of that organization attending the trial would be required to fly to Illinois to do so, and the presence of Lambert-St. Louis International Airport directly across the river from Madison County makes that a more convenient location for them.  Potter is a Missouri corporation.  Although the record does not disclose its precise location, some discussion at the hearing indicated that Potter is located somewhere in the St. Louis metropolitan area, making Madison County the more convenient forum for Potter as well.  

As noted, Dale Schuerman, who is both a named defendant and the sole representative of defendant Schuerman Electronics, lives and does business in Macon County, which is the more convenient forum for him.  Finally, Harrington Signal is located in Moline, Illinois.  The driving time from Moline to Decatur, where the Macon County court is located, is approximately one hour less than the driving time from Moline to Edwardsville, where the Madison County court is located.  A trial in either county would inconvenience the representatives of Harrington Signal by requiring them to take an entire day out of their schedules to attend the trial.  However, a Madison County trial would require more driving time and greater expense for gas, so Macon County would be somewhat more convenient for this defendant.

As previously noted, Brenda Roosevelt lives in Madison County, John Schwalbach lives in Macon County, and both are administering Nick's estate in Madison County.  Madison County is undoubtedly the more convenient forum for Brenda.  The need to account to one court for proceedings in another makes Macon County inconvenient for 
both
 of them; moreover, to the extent that a drive from Decatur to Edwardsville for a trial might inconvenience John Schwalbach, the defendants cannot argue that the cause should be transferred because it is inconvenient to one of the plaintiffs.  On balance, we find that this factor favors Madison County. 

 We next consider access to witnesses and other evidence.  The defendants point to several potential witnesses who live in Macon County.  These witnesses include firefighters who responded to the fire, campus officials, and fraternity members who lived in the Kappa Sigma house on the morning of the fire.  The plaintiffs point out, however, that all the fraternity members who were present that morning have long since graduated and moved on to pursue their careers.  Only four of them remain in Macon County.  The others have scattered around the country.  Moreover, the plaintiffs point out that one of the young men with the most relevant knowledge lives in St. Louis, which is adjacent to Madison County.  The plaintiffs also intend to call 12 witnesses of their own who live in Madison County, including the family doctor who was Nick's primary care doctor for many years.

The defendants argue that the plaintiffs should not be allowed to support their choice of forum with the fact that fraternity members who witnessed the fire have graduated and moved on from Macon County because, had the case been filed there in the first place, the students would still be in Macon County.  We disagree.  One of the students present at the fraternity house on the night of the fire was a first-year student, due to graduate in May 2004.  The remaining students were due to graduate earlier.  The plaintiffs filed this case on February 27, 2001.  As previously noted, the average time it takes a case to go from filing to verdict in Macon County is 28.8 months.  Assuming the plaintiffs had filed this case in Macon County on February 27 and it took no more time than average to come to trial, it likely would have been tried sometime in June or July of 2003.  At that point, all but one of the students present on the morning of the fire would have graduated and moved on.  

The defendants also argue that the presence of witnesses for the plaintiffs in Madison County should be given little weight because they are not occurrence witnesses.  The plaintiffs' Madison County witnesses include the family doctor who treated Nick and others who knew him.  These witnesses were relevant to the loss of Nick's society, comfort, and companionship to his family, an element of damages that the plaintiffs will be required to prove.  His family doctor's testimony is relevant to his life expectancy.  The defendants' argument is premised on the notion that hypothetically a plaintiff can choose a treating physician to treat an injury alleged in a suit or an expert witness on the basis of his or her location in order to establish venue.  While it is true that the plaintiffs have somewhat more control over the damages witnesses they choose to call than either party has over occurrence witnesses, we think it is to be expected that the people with the most relevant testimony on damages in a wrongful death action involving a young college student will be people who live near his family home.  We agree with the plaintiffs that it is simply ludicrous to suggest that Brenda Roosevelt chose her son's primary care doctor with an eye on any future litigation.  On balance, we do not think this factor strongly favors either forum.  

Finally, we consider the practical problems that make a trial expeditious, inexpensive, or easy to try.  The plaintiffs point out that it likely will be difficult to pick a jury in Macon County because the fraternity fire received a great deal of publicity there and a significant portion of the population of Macon County has ties to Millikin University.  This problem obviously makes it less expeditious to try the case there.  

The defendants, however, emphasize the possibility of a jury view of the fraternity house.  Obviously, if the trial is held in Madison County, it will be significantly more burdensome for a jury to view the site where the fire occurred than it would be if the trial were held in Macon County.  However, the fraternity house burned in a fire and was thereafter rebuilt and remodeled.  Photographs and building plans that show the house as it was on the morning of the fire will be far more relevant to the jury (as well as more convenient) regardless of where the trial is held.  The defendants point to language in 
Dawdy
 in which the supreme court chastised this court for discounting the possibility of a jury view where we found that nothing in the record indicated that a jury view was 
necessary
.  
Dawdy
, 207 Ill. 2d at 178, 797 N.E.2d at 697 (noting that this factor "is not concerned with the 
necessity
 of viewing the site of the injury[] but rather is concerned with the 
possibility
 of viewing the site, if appropriate" (emphases in original)).  We do not read this language to require us to give much weight to this factor anytime a jury view is theoretically possible, no matter how unlikely it would be for a trial court to find a jury view appropriate.  Indeed, such an interpretation would be at odds with the 
Dawdy
 court's admonition that no one factor should be determinative.  See 
Dawdy
, 207 Ill. 2d at 180, 797 N.E.2d at 698.  On the whole, we think this factor favors Madison County.

Considering the totality of the circumstances, we do not find that these factors 
strongly
 favor either forum over the other.  As previously explained, when a plaintiff has chosen her home county as a forum, as Brenda Roosevelt has done here, that choice is entitled to great deference.  Moreover, the trial court enjoys broad discretion in ruling on 
forum non conveniens 
motions.  The court abuses this broad discretion only where no reasonable person could take the view adopted by the trial court.  
Dawdy
, 207 Ill. 2d at 177, 797 N.E.2d at 696.  In 
Dawdy
, the supreme court found that this standard had been met in a case where the plaintiff's chosen forum was neither his home county nor the situs of the accident at issue.  
Dawdy
, 207 Ill. 2d at 184-85, 797 N.E.2d at 700-01.  That is not the case here.  The plaintiffs chose to bring their case in the home county of both the decedent and one of the plaintiffs, and the trial court found that the convenience factors do not overwhelmingly favor a transfer to Macon County.  This conclusion is entirely reasonable.  Thus, we find no abuse of discretion.

For the foregoing reasons, we affirm the trial court's order denying the defendants' motions to transfer.

Affirmed.

HOPKINS and WELCH, JJ., concur.

NO. 5-03-0515

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

JOHN SCHWALBACH and BRENDA ROOSEVELT, )  Appeal from the

Individually and as Special Administrators of the )  Circuit Court of

Estate of Nicholas Schwalbach, Deceased, and as )  Madison County.

Parents and Next Friends of Alex Roosevelt, Catherine )

Roosevelt, and Sophia Schwalbach, Next of Kin of )

Nicholas Schwalbach, Deceased, )

     Plaintiffs-Appellees, )

v. )  No. 01-L-392

MILLIKIN KAPPA SIGMA CORPORATION, )

GAMMA-BETA PRIME CHAPTER OF KAPPA )

SIGMA FRATERNITY, KAPPA SIGMA )

FRATERNITY, HARRINGTON SIGNAL, INC., )

POTTER ELECTRIC SIGNAL COMPANY, DALE )  Honorable Nicholas G. Byron

SCHUERMAN, and SCHUERMAN ELECTRONICS, )  and Honorable A. A. Matoesian,

     Defendants-Appellants. )  Judges, presiding.

___________________________________________________________________________________

Opinion Filed
: December 16, 2005

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Karen L. Kendall, Brad A. Elward, Heyl, Royster, Voelker & Allen, Suite 600, 

for
 Bank One Bldg., 124 S.W. Adams Street, Peoria, IL 61602; Frederick P. Velde, 

Appellants
 Matthew R. Booker, Heyl, Royster, Voelker & Allen, One North Old State Capitol

Plaza, Springfield, IL 62701 (Attorneys for Gamma-Beta Prime Chapter of Kappa Sigma Fraternity, Kappa Sigma Fraternity, Millikin Kappa Sigma Corp.)

William P. Hardy, Hinshaw & Culbertson, 400 South Ninth Street, Suite 200, Springfield, IL 62701; John E. Sabo, Hinshaw & Culbertson, 521 West Main Street, Suite 300, P.O. Box 509, Belleville, IL 62222 (Attorneys for Harrington Signal, Inc.)

Kenneth L. Halvachs, Gundlach, Lee Eggmann, Boyle & Roessler, 5000 West Main Street, P.O. Box 23560, Belleville, IL 62226-0560 (Attorney for Potter Electric Signal Company)

Cristina Mungai, Stefanie R. Glover, Johnson & Bell Ltd., 55 East Monroe Street, Suite 4100, Chicago, IL 60603-5803 (Attorneys for Dale Schuerman)

___________________________________________________________________________________

Attorneys
 R. Gerald Barris, Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., 800 Illinois 

for
 Building, P.O. Box 5131, Springfield, IL 62705; Robert W. Rongey, Callis Papa

Appellees
 Jackstadt Szewszyk Rongey & Sanzinger, P.C., 1326 Niedringhaus Avenue, P.O. Box 1326, Granite City, IL 62040

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed12/16/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.