*In re* MARRIAGE OF JERROLD C. WILLIS, Petitioner-Appellee, and RUTH ANN WILLIS, Respondent-Appellant.

Third District   No. 3—91—0241

Opinion filed September 3, 1992.

Claudon, Lloyd, Barnhart & Beal, Ltd., of Canton (Gary E. Barnhart, of counsel), and Vonachen, Lawless, Trager & Slevin, of Peoria (John R. Pusey, of counsel), for appellant.

Dean A. Stone and Flack, McRaven & Stephens, both of Macomb (James P. Murphy, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The petitioner father, Jerrold C. Willis, and the respondent mother, Ruth Ann Willis, had their marriage dissolved on July 18, 1989. The trial court awarded custody of the parties' two minor children to Jerrold. Ruth Ann appeals from that custody determination.

The record shows that the parties were married in 1981. They had two minor children born during the marriage, Joshua and Andrea. Jerrold also had a son from a prior marriage born in 1973.

At the time of the hearing on the custody petition, Jerrold was employed as a radiologist. His hours were from 8:30 a.m to 5 p.m., and he was on call approximately 17 weekends a year. In February of 1988, Jerrold told Ruth Ann that he wanted a divorce. At that time, Jerrold had a girlfriend, Debbie Mace. Thereafter, the parties separated.

Jerrold introduced into evidence a day-in-the-life video. It depicted Jerrold, his two children, and Mace, during visitation pursuant to the trial court's temporary custody order. Jerrold also introduced into evidence a videotape of Andrea shortly after she had been with Ruth Ann, in which Andrea stated that she hated Mace and would like to cut her head off.

After the parties' separation, Ruth Ann attended an eating disorder clinic at St. Francis Hospital. There, Kay Kaufman and Dr. Eckerd evaluated her. A battery of tests indicated that Ruth Ann did not need psychiatric counseling for a personality disorder and did not have an eating disorder or anorexia. However, the tests indicated that she had a drive for thinness and mild to moderate depression. Kaufman met with Ruth Ann for five months. During that time, her lowest weight was 114 pounds, while her ideal weight was 123 pounds. It

was Kaufman's opinion that Ruth Ann did not have any problems that would effect her relationship with her children.

Dr. Ronald Krager testified that current research shows that weight loss below 15% indicates anorexia nervosa. Many anorexics fully recover and thereafter are effective in their work and homelife. Dr. Krager further noted that anorexics are often misdiagnosed as having personality disorders.

The parties agreed to select Dr. Richard Grant as an "unbiased medical professional" to psychologically evaluate the parties and help assist the court. Dr. Grant evaluated Ruth Ann and found that she exercised six hours a day during the marriage, and in order to do so, she had other people watch her children. Dr. Grant also reviewed Ruth Ann's hospital records. Grant testified that although he had arrived at a psychiatric diagnosis of Ruth Ann, he did not put one in a written report. He opined that Ruth Ann was suffering from a long-term personality disorder that would not likely respond to treatment. He further stated that she was suffering from anorexia nervosa. Ruth Ann objected to that testimony, contending that since Dr. Grant's written report did not indicate that he had made a diagnosis, he was not able to testify as an expert witness as to such diagnosis. The trial court overruled the objection. Dr. Grant concluded that Jerrold was more emotionally stable to care for the children and should be granted custody.

Dr. Leon Jackson testified about a Minnesota Multiphasic Personality Inventory (hereinafter referred to as MMPI) profile of Ruth Ann contained in her hospital records dated April 7, 1988. He also testified about what the mental condition would be of a person who had an MMPI like Ruth Ann's. Ruth Ann objected to the testimony on the basis that Dr. Jackson was not presented under Supreme Court Rule 220 (134 Ill. 2d R. 220) as an expert witness who would give an opinion about her MMPI. Ruth Ann also pointed out that pursuant to an agreement by the parties, Dr. Jackson was an expert retained to represent Jerrold and the children, while she retained her own expert to examine her and the children. The court allowed Dr. Jackson to testify on rebuttal as to the MMPI and gave Ruth Ann's attorney the opportunity to examine or depose Jackson prior to that testimony.

On appeal, Ruth Ann first argues that the trial court erred in allowing into evidence the day-in-the-life video. While she acknowledges that the Illinois Supreme Court recently held in *Cisarik v. Palos Community Hospital* (1991), 144 Ill. 2d 339, 579 N.E.2d 873, that such evidence is admissible in the context of a personal injury case, she contends that a different rule should apply in a child custody proceeding.

She maintains that the video distorted the procedure by which the trial judge may interview children *in camera* during the course of a custody proceeding.

■ Section 604(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that the trial court may interview a child in chambers to ascertain his wishes as to custody and visitation. (Ill. Rev. Stat. 1989, ch. 40, par. 604(a).) It has been held that there is no absolute right to present a child's testimony during a custody proceeding, and, when that testimony is presented, it is left to the trial court's discretion whether to receive it from the witness stand or *in camera*. (*In re Marriage of Theeke* (1981), 105 Ill. App. 3d 119, 433 N.E.2d 1311.) The scope of inquiry of an *in camera* interview is also a matter largely within the trial court's discretion. See *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811.

Section 604(a) of the Act further requires that counsel be present during the in-chambers interview unless otherwise agreed upon by the parties. (Ill. Rev. Stat. 1989, ch. 40, par. 604(a).) The right of counsel to be present given by section 604 is intended to assure fairness in the interview; the added protection afforded to the litigants by the presence of counsel permits the court to exercise considerable discretion in setting the scope of the interview in order to best determine the child's intelligence, understanding, and basis for any preference for a custodian. *Fohr v. Fohr* (1979), 75 Ill. App. 3d 575, 394 N.E.2d 87.

Applying the above-mentioned principles, we find that the trial court erred in admitting the videotape into evidence. *Cisarik v. Palos Community Hospital* (1991), 144 Ill. 2d 339, 579 N.E.2d 873, does not apply here. In the context of a child custody proceeding, the legislature has specifically provided that children's testimony be taken either in open court or by means of an *in camera* interview with the presence of counsel. This statutory framework demonstrates the legislature's overriding concern for protecting the welfare of children. Accordingly, we disapprove of the practice of videotaping children. It is error for the court to allow it. Such a procedure is fraught with the potential for great abuse and damage to the lives of young children. We further find, however, that under the circumstances of the present case, the error in the admission of the videotape does not require reversal, since it did not adversely affect the outcome of the case. A review of the record amply supports the trial judge's decision. In a case in which the use of the videotape did adversely affect the outcome of the case, we would not hesitate to reverse and remand. We state in the strongest possible terms that the procedure of using day-in-the-life

videotapes of young children in child custody proceedings must not be allowed.

. Ruth Ann next argues that the trial court committed reversible error when it allowed into evidence Dr. Grant's diagnosis about Ruth Ann's mental condition. She contends that the testimony violated Supreme Court Rule 220 because the diagnosis was not included in the doctor's written report.

The relevant portion of Supreme Court Rule 220 provides:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." 134 Ill. 2d R. 220(d).

It appears to the court that the testimony of Dr. Grant and Dr. Jackson is really a failed attempt to utilize section 605 of the Illinois Marriage and Dissolution of Marriage Act. "The court may order an investigation and report concerning custodial arrangements for the child. *** (b) In preparing his report concerning a child, the investigator may consult any person who may have information about the child and his potential custodial arrangements. Under order of the court, the investigator may refer the child to professional personnel for diagnosis. *** (c) *** Any party to the proceeding may call the investigator, or any person whom he has consulted as a court's witness, for cross-examination." (Ill. Rev. Stat. 1989, ch. 40, par. 605.) While the requirements of section 605 were not complied with in this case, it appears to this court that the parties were attempting to have the kind of neutral investigator and expert witness that is contemplated by section 605. While again we do not approve of the procedure used in this case, we find that it did not adversely affect the outcome of the proceedings and was a failed attempt of the parties to use section 605.

In the case *sub judice*, the parties agreed to utilize Dr. Grant as "an unbiased medical professional" to psychologically evaluate the parties. Given the parties' agreement, we find no Rule 220 violation regarding Dr. Grant's diagnosis testimony. Moreover, we find that even if the trial court erred with respect to allowing Dr. Grant's testimony, Ruth Ann has failed to establish that she was prejudiced. It is well settled that a reviewing court will not disturb a trial court's deci-

sion unless the party asserting the error clearly demonstrates that he was prejudiced. (*Crawford County State Bank v. Grady* (1987), 161 Ill. App. 3d 332, 514 N.E.2d 532.) Furthermore, error in the admission of evidence does not require reversal if the evidence does not materially affect the outcome. *Crawford County State Bank v. Grady* (1987), 161 Ill. App. 3d 332, 514 N.E.2d 532.

Ruth Ann next argues that the trial court erred in allowing into evidence Dr. Jackson's testimony about Ruth Ann's MMPI profile. She contends that the doctor's testimony about the MMPI should have been excluded because it was not disclosed in his written report and the parties had an agreement that he would evaluate only Jerrold.

■ We note that the trial court specifically ruled that it would not take into consideration the doctor's interpretation of Ruth Ann's MMPI. Instead, it noted that it would only consider general information about the MMPI test, since the MMPI test had been mentioned elsewhere in the testimony. The court also gave Ruth Ann's counsel an opportunity to depose Dr. Jackson before allowing the complained-of testimony. Under the circumstances, we find that even if the trial court erred in admitting the evidence, it does not require reversal since no prejudice resulted.

Lastly, Ruth Ann argues that the trial court's decision to award Jerrold custody was against the manifest weight of the evidence. In essence, she claims that she was the children's "psychological parent" and that her purported mental health problems were exaggerated.

A trial court's custody decision will not be reversed unless there has been a clear abuse of discretion or the decision was contrary to the manifest weight of the evidence. (*In re Custody of Piccirilli* (1980), 88 Ill. App. 3d 621, 410 N.E.2d 1086.) Furthermore, it is well settled that in cases regarding custody, there is a strong and compelling presumption in favor of the result reached by the trial court. (*In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 487 N.E.2d 739.) The trial court is vested with great discretion because of its superior opportunity to observe witnesses, evaluate the evidence, and determine the best interests of the child. *Lloyd v. Lloyd* (1980), 92 Ill. App. 3d 124, 415 N.E.2d 1105.

■ The custody decision in this case is governed by section 602 of the Illinois Marriage and Dissolution of Marriage Act. That section of the statute sets forth the factors for making the child custody determination. Based on our review of the record, it appears that the trial court evaluated the testimony before it pursuant to section 602, the best interests of the child, that the court followed the factors and

that there was adequate evidence in the record to support the trial court's findings.

In the instant case, the trial court specifically found that Dr. Grant's testimony was entitled to the most weight. Dr. Grant testified that Jerrold was more emotionally stable than Ruth Ann and that he should be granted custody. Since the trial court was in a better position to evaluate all the evidence and determine the credibility of the witnesses, we are unable to say that its decision was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of McDonough County is affirmed.

Affirmed.

BARRY, P.J., and GORMAN, J., concur.