In re MARRIAGE OF TIMOTHY FEIG, Petitioner-Appellant, and KATHERINE FEIG, n/k/a Katherine Brady, Respondent (Milton Brady et al., Intervenors-Appellees).

Third District   No. 4—97—0648

Opinion filed May 1, 1998.

Adrienne W. Albrecht (argued), of Sacks, Albrecht, Copeland, Smith & Sacks, of Kankakee, for appellant.

Wayne O. Smith (argued), of Dilks, Rodeen, Gibson & Smith, Ltd., of Paxton, for appellees Milton Brady and Cynthia Brady.

JUSTICE HOLDRIDGE delivered the opinion of the court:

This is an interlocutory appeal from a decision of the circuit court of Iroquois County which allowed Milton and Cynthia Brady (the Bradys) to intervene and petition for custody in a pending modification of custody proceeding concerning their granddaughter, Nikita Feig (Niki), the minor child of Timothy Feig (Tim) and Katherine Brady (Kathy).

## Facts

In April 1992, Tim and Kathy's marriage was dissolved. The parties entered into a marital settlement agreement wherein Tim agreed to Kathy's sole custody of Niki, subject to his reasonable visitation.

At the time of the divorce, the military had stationed Tim in California, and Kathy and Niki resided with the Bradys. During the summer of 1992, Kathy and Niki moved to California and resided with Tim for approximately six months. Thereafter, Kathy and Niki moved back to the Bradys. Although Niki has primarily lived with the Bradys since she was six months old, Kathy has resided with them on and off.

In the summer of 1994, Kathy and her father delivered Niki to Tim's parents in Indiana in order for her to travel with them to California for summer visitation with Tim. Tim was to return Niki prior to the start of school; however, Tim kept her until after the beginning of the school year.

In August 1994, Tim filed a petition to modify custody in the circuit court of Iroquois County, alleging that Kathy frequently absented herself from Niki and undertook a transient and unstable lifestyle.

At a hearing for temporary relief, the Bradys appeared with counsel, and Kathy appeared without counsel. Tim objected to the Bradys' participation in the proceeding without filing a formal petition to intervene and challenged their standing. The Bradys stated that they did not intend to seek custody of Niki. The matter was set for hearing, and the court invited the Bradys to formally intervene. Pending determination of the modification petition, the court ordered Tim to return Niki to Kathy, conditioned upon Niki residing with the Bradys.

At an October 1994 hearing, the Bradys advised the court that they would not formally intervene in the case. The case was continued, and in January 1995, the matter was taken under advisement. During this time, Tim filed a motion to reopen the evidence. Tim alleged that he had moved to Indiana to be closer to Niki and that Kathy had taken up a separate residence from Niki. Tim also filed several rules to show cause against Kathy, alleging that he was deprived of visitation with Niki.

In February 1996, Kathy's attorney withdrew from the case. In March 1996, after the Bradys allegedly denied Tim visitation, and with Kathy's whereabouts unknown, Tim filed a petition for *writ* of *habeas corpus* against them. In April 1996, the Bradys filed a petition to intervene for custody. Over Tim's standing objection, the court allowed the Bradys time to present evidence and rescheduled the case for hearing.

The Bradys withdrew and dismissed their petition to intervene and for custody. Tim and Kathy continued to present evidence on the modification petition. In August 1996, the Bradys once again informed

the court that they did not intend to file a petition to intervene. On November 22, 1996, the Bradys filed a motion to reinstate their petition to intervene, which was set for hearing in June 1997. Tim filed a motion to dismiss; the court granted the motion, finding that the petition did not allege acquiescence or abandonment by Tim. However, the court allowed the Bradys leave to refile, which they did. In June 1997, and over Tim's objection, the court held an evidentiary hearing concerning the Bradys' standing to intervene.

Testimony was presented and at the close of the Bradys' case, Tim moved for a directed finding denying the petition to intervene. The court found that the Bradys had standing and allowed the petition to intervene. At Tim's request, the court certified the question for an immediate interlocutory appeal, which was allowed in August 1997.

## ANALYSIS

### Standing

Tim contends that the court committed reversible error in finding that the Bradys had standing to intervene. Tim asserts that the standing requirements of section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/601(b)(2) (West 1994)) were not met. Specifically, he asserts the requirement that Niki "not [be] in the physical custody of one of his [her] parents" was absent. 750 ILCS 5/601(b)(2) (West 1994).

■ A nonparent seeking standing under section 601 of the Act has the burden of showing that the child is in his physical custody, which requires that the child's parents voluntarily relinquish custody of the child to the nonparent. See *Franklin v. Devriendt*, 288 Ill. App. 3d 651 (1997). The voluntary relinquishment by the parents to a nonparent must be clear and indefinite. *In re Petition of Kirchner*, 164 Ill. 2d 468, 491 (1995); *In re Marriage of Dile*, 248 Ill. App. 3d 683 (1993) (father did not relinquish custody by agreeing to allow grandparents to retain possession of the child temporarily).

In determining the physical custody of a child, courts do not limit their consideration to physical possession at the time of filing, but they also consider how the possession came about, the nature and duration of the possession (*In re Marriage of Carey*, 188 Ill. App. 3d 1040, 1048 (1989)), and who provided for the child's care, custody, and welfare (*In re Marriage of Kulawiak*, 256 Ill. App. 3d 956, 962 (1993)).

A reviewing court will not disturb an order of a circuit court in a custody proceeding unless it is against the manifest weight of the evidence or results in a manifest injustice. *In re Custody of McCuan*,

176 Ill. App. 3d 421, 427 (1988). A court's ruling is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent. *Tally Ho Associates, Inc. v. Worth Bank & Trust Co.*, 264 Ill. App. 3d 957 (1994).

■ In finding that the Bradys had standing to intervene, the court stated that it could not ignore the fact that "the evidence is overwhelming that this child has lived with her grandparents for the vast majority of eight years *** since the age of 6 months with the exception of the trips to California and Georgia." It also appeared to the court that, for the majority of Niki's life, it was the Bradys who were providing the day-to-day support and care for Niki.

The record indicates that Kathy and Niki resided with the Bradys from the time of the parties' divorce until the summer of 1992, when they lived with Tim in California for approximately six months. In the fall of 1992, Kathy and Niki returned to the Bradys, where they stayed until Kathy relocated to Champaign. After one month in Champaign, Kathy and Niki returned to the Bradys. In the summer of 1993, Kathy and Niki visited family in Georgia for approximately two months.

The record shows that, more often than not, Niki resided with the Bradys while Kathy was absent from the residence. Milton described Kathy's behavior as "she's always in and out *** going up to her grandmother's and back." Kathy acknowledged that at times she stays with her grandmother and that periodically she stays in a local motel with her fiance. Kathy testified that on occasion she would leave Niki with her parents and go "on the road," sometimes for over a week at a time, with her fiance, who was a truck driver. Kathy admitted in court that she "could walk out of here today and tell my parents that I wanted to go to my cousin's house overnight and they never ever have a problem with taking care of my kids when I needed them to."

Although Kathy's absences from Niki alone cannot serve to confer standing to the Bradys (see *In re Marriage of Sechrest*, 202 Ill. App. 3d 865 (1990) (bad parenting is not enough to divest parent of custody)), the record shows that the Bradys provided for Niki's financial support, including medical care, and physical care.

In regard to Tim, the Bradys maintain that there were times when he had sporadic telephone contact and visitation with Niki. Cynthia testified that Tim often told her that he was glad she and Milton "were there for Nikki and taking such good care of her since he wasn't able to do that himself." As early as the fall of 1995, Cynthia maintains that Tim had conversations with her concerning the Bradys' willingness to obtain custody of Niki; to the effect that "[h]e

[(Tim)] would be willing to give up the custody battle if we [(the Bradys)] would agree to take physical custody [of Niki]."

The record establishes that Tim was aware that Niki's primary residence was at the Bradys and that Kathy had moved in and out of the Bradys' household since the divorce. Tim testified that Kathy has "been in and out of her parent's house so many times I am sure they have a revolving door. *** Her parents are at a moments notice subject to taking care of both of her children for an unknown period of time. I [(Tim)] discussed that, in fact, with Cindy ***." Tim also appeared to have agreed to Niki living with the Bradys, as there is no evidence that he objected to that arrangement. On cross-examination, Tim testified that his telephone contact with Niki was made to the Bradys. Importantly, Tim admitted on cross-examination that, after he filed his modification petition, he told the Bradys that he would agree to their having custody of Niki, as long as Kathy did not have custody of her. Unlike the father in *Dile*, Tim's admission suggests that he did not view Niki's living arrangement with the Bradys as a temporary situation.

The record supports the court's finding that Niki's primary residence since she was six months old was at the Bradys and that the Bradys provided for her financial and physical needs. The record evidences Kathy's voluntary delivery of Niki to the Bradys, her repeated absences from the Bradys, and Tim's acquiescence to Niki's residing with the Bradys while Kathy was absent. It appears to this court that the voluntary nature of the transfer of Niki to the Bradys and the lengthy and integrating care provided by the Bradys to Niki in their home were significant factors for the court to consider when determining standing.

After careful review of the record, we find that it was not against the manifest weight of the evidence for the court to conclude that the Bradys had established that Niki had "not [been] in the physical custody of one of [her] parents," as required by section 601(b)(2) of the Act. We therefore find that the court's determination that the Bradys had standing to intervene was not against the manifest weight of the evidence.

## Petition to Intervene

■ Tim next contends that the court erred in refusing to dismiss the Bradys' petition to intervene. Tim maintains that the Bradys' petition to intervene was insufficient as a matter of law because it failed to allege that either Kathy or Tim permanently and indefinitely relinquished custody of Niki to them. *In re Marriage of Siegel*, 271 Ill. App. 3d 540, 544 (1995) (petition should allege facts sufficient for

court to conclude, if proven, nonparent had standing under section 601(b)(2) of the Act).

The Bradys' petition to intervene alleged that Kathy had voluntarily relinquished physical custody and control of Niki to them since her divorce, with the exception of her trip to Georgia, which occurred prior to Tim filing his modification petition. It alleged further that Tim was aware that Niki was in the Bradys' possession and control and that he voluntarily agreed to that arrangement from the time of the parties' divorce until the filing of his modification petition.

We find that these facts, if proven, are sufficient to show that either Kathy or Tim voluntarily relinquished custody of Niki to the Bradys, thereby giving the Bradys standing to intervene.

## Waiver

■ Lastly, Tim contends that the Bradys have waived their right to intervene in this case considering they: (1) allowed Tim and Kathy to litigate custody for several years without filing a petition to intervene; (2) appeared with legal counsel several times and refused to intervene, even when invited to do so by the court; and (3) filed and dismissed a petition to intervene.

In addition to contending that the Bradys' petition to intervene was untimely (see 735 ILCS 5/2—408(b) (West 1994)), Tim asserts that he was prejudiced by the Bradys' delay, and he believes that allowing the Bradys to intervene after three years of testimony would only postpone the inevitable and make the eventual transition that much more traumatic for Niki.

In the *Sechrest* case, the court found that a mother waived her standing objection by allowing the case to continue for three years without raising a standing issue. See also *In re Custody of McCarthy*, 157 Ill. App. 3d 377 (1987) (lack of standing is an affirmative defense that is waived unless raised during the pleading stage).

In this matter, the court recognized that "[a]s far as the estoppel issue goes *** [i]t certainly has the impact of prolonging the proceedings, but this is a case in which the Bradys have always been if not deeply meshed *** their presence has always been here. [I]t would *** ignore reality to conclude that it is a surprise that the Bradys would file at some point short of resolution of this matter a motion to intervene." We agree.

The Bradys may not have filed their petition to intervene expeditiously; however, they appeared with counsel at every court proceeding concerning this matter. We agree that it would be unreasonable to infer that Tim was surprised. We note that the court acknowledged the instant three-year custody proceeding has taken "way too long,"

and it recognized that "there's some extenuating circumstances *** a shift in judges *** [and the court's] schedule hasn't been the best."

Under these circumstances, we find that the Bradys have not waived their right to intervene. In addition to finding that the court's decision was not against the manifest weight of the evidence, considering the importance of custody issues, we find that a manifest injustice would be served by reversing the court's decision.

Based on the foregoing, we affirm the circuit court of Iroquois County.

Affirmed.

BRESLIN and SLATER, JJ., concur.