916 N.E.2d 123 (2009)
334 Ill.Dec. 90
In re A. S., a Minor.
(Jon Sobieralski, Petitioner-Appellee, v. Michelle Aldworth, Respondent-Appellant).
No. 5-09-0205.
Appellate Court of Illinois, Fifth District.
September 21, 2009.
*124 Jane M. Lawinger, Jeffrey A. DeLong, Lawinger Law Office, Vandalia, IL, for Appellant.
Stanley M. Brandmeyer, Brandmeyer Law Office, P.C., New Baden, IL, for Appellee.
*125 Justice GOLDENHERSH delivered the opinion of the court:
Respondent, Michelle Aldworth, the biological mother of A.S., appeals from an order of the circuit court of Clinton County granting primary physical custody in favor of petitioner, Jon Sobieralski, the biological father. The issues raised in this appeal are as follows: (1) whether the trial court erred in denying respondent's motion for a change of venue and (2) whether the trial court erred in granting primary physical custody to petitioner. We reverse and remand with directions.

BACKGROUND
Petitioner and respondent met while attending college at Southern Illinois University Carbondale. Petitioner is originally from Albers, a small town in Clinton County, and respondent is from Hinsdale, a suburb of Chicago. Respondent got pregnant, and A.S. was born on October 4, 2003. Petitioner and respondent signed a voluntary acknowledgment of paternity on October 5, 2003, in Carbondale. At the time of A.S.'s birth, the parties were living together. They never married and ultimately broke up in April 2004 but continued to reside together in Carbondale until the end of the semester.
In June 2004, respondent and A.S. moved to Hinsdale and lived with her parents, while petitioner remained in Carbondale to finish his degree. Petitioner completed his degree and moved back to Albers in August 2004. Petitioner remained in Albers until January 2005, at which point he moved to Chicago and lived with a friend. During this time, petitioner did not pay child support but began paying one-half of the day-care expenses ($115 per week) for A.S. in October 2004. Petitioner also tried to give respondent a little money for food and diapers.
There was no set schedule for visitation, but petitioner did see A.S. when he moved to the Chicago area. At times, petitioner saw A.S. once a week, and other times he saw A.S. four times a week. In June 2005, petitioner got his own apartment in La Grange, another suburb of Chicago, and the parties agreed to an alternating custody arrangement of every other day and every other weekend. This arrangement worked well for the parties until petitioner lost his job in June 2006. Petitioner informed respondent that he was going to have to move back to Albers. Respondent told petitioner she would expect him to start paying child support.
For the two weeks before petitioner moved back to Albers, A.S. stayed at his apartment because neither party could afford day-care expenses. Petitioner brought up the idea of A.S. moving with him to Albers. The parties discussed this as a temporary arrangement for one year, which would allow respondent the opportunity to finish her degree. Initially, respondent was against the idea, but she ultimately realized that by allowing A.S. to move with petitioner back to Albers for one year, she would be able to finish her college degree, secure employment, and move out of her parents' house.
In June 2006, petitioner and A.S. moved back to Albers. Respondent visited on alternating weekends and called every night to talk to A.S. Respondent sometimes stayed at petitioner's parents' house during her visits, but there was no longer a romantic relationship between the parties. In January 2007, petitioner informed respondent that he wanted a new arrangement in which A.S. would live with him permanently. The relationship between the parties became somewhat frosty at that point; however, respondent did not do anything to change the status, because she was without means to hire a lawyer and *126 felt that it was in A.S.'s best interest to stay with petitioner while she finished school.
Petitioner returned A.S. to respondent on June 19, 2007, for an agreed-upon visit. Unbeknownst to respondent, however, petitioner had filed a petition to establish a parent-child relationship and for custody and other relief on June 6, 2007, in Clinton County. Respondent was not served until June 25, 2007. On July 11, 2007, respondent filed a motion for a change of venue to Cook County on the basis that A.S. was a permanent resident of Cook County. After a hearing, the trial court denied respondent's motion for a change of venue. On July 30, 2007, a temporary order was entered in the circuit court of Clinton County granting petitioner and respondent temporary custody of the minor child for alternating two-week periods beginning August 4, 2007.
On December 7, 2007, a final hearing was conducted. The evidence showed that petitioner is employed as a tunnel contractor and resides with A.S. at his parents' home in Albers. Petitioner works four days a week for 10-hour shifts, for 40 hours per week. Petitioner was gone from home on Monday through Thursday from 5 a.m. until 5 p.m. When the weather is warm, petitioner works 50 hours per week. Petitioner's 17-year-old sister gets A.S. up each morning at 6:30 a.m. and takes A.S. to day care. Petitioner plans to purchase a home on a bond for deed and move out of his parents' home. He has already chosen a house. He anticipates that when he moves out of his parents' house, he will take A.S. to day care at 5 a.m. on his way to work.
Respondent testified that she completed her degree in political science in August 2007. Respondent currently resides with her sister, a first-grade teacher, in Chicago in a three-bedroom home. Respondent admitted that over the course of the four years prior to the lawsuit, she lived in multiple places, including Carbondale, her parents' home, and various apartments. Respondent is employed part-time as a broker's assistant at the Chicago Board of Trade. She works five days a week from 9:30 a.m. until 1:15 p.m. Initially, she was an independent contractor, but ultimately she became a permanent employee of the Chicago Board of Trade and, thus, receives health benefits.
Petitioner testified that respondent called A.S. every night while he resided in Albers. However, respondent testified that often her phone calls were not answered or the phone was hung up immediately after she spoke with A.S. Respondent said she did not speak with petitioner for weeks at a time. Respondent felt like petitioner was trying to cut her out of A.S.'s life.
A guardian ad litem was appointed during the course of this litigation. In his report, the guardian found that each party is a good parent, and he did not make a recommendation of one party over the other to have primary custody. The report contains a history of A.S.'s residences. The report also states that the parties agree that petitioner lost romantic interest in respondent when she became pregnant. Respondent attempted to make the relationship work, but petitioner advised the guardian that he never had any intention of a permanent relationship with respondent. The guardian specifically stated: "I am concerned with [petitioner's] negative impressions of [respondent]. [Respondent] thinks that communication will improve when the custody issues are decided."
The circuit court took the matter under advisement. On January 14, 2008, the circuit court entered an order granting primary physical custody of A.S. to petitioner. *127 The final custody order was entered on October 3, 2008. Respondent filed a motion to vacate on October 28, 2008. On April 2, 2009, the trial court entered an order denying the motion to vacate. This appeal followed.

ANALYSIS

I
The first issue we are asked to address is whether the trial court erred in denying respondent's motion for a change of venue. Respondent contends that venue was proper in Cook County because A.S. was a permanent resident of Cook County, not Clinton County. Petitioner responds that Clinton County was a proper venue because the record shows that the minor was in Clinton County when petitioner filed his action. After careful consideration, we reluctantly agree with petitioner.
In the instant case, there was no question that petitioner was the father of A.S., because the parties signed a voluntary acknowledgment of paternity the day after A.S. was born. Therefore, while there was some disagreement regarding under which statute venue should be determined, we agree with respondent that venue should be determined pursuant to the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/601(b) (West 2006)), not the Illinois Parentage Act of 1984 (750 ILCS 45/6 (West 2006)). Section 601(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) specifically provides as follows:
"(b) A child custody proceeding is commenced in the court:
(1) by a parent, by filing a petition:
(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or
(ii) for custody of the child, in the county in which he is
permanently resident or found[.]" 750 ILCS 5/601(b)(1) (West 2006). Petitioner asserts that the plain language of the statute established Clinton County as a proper venue because A.S. was in Clinton County when he filed the petition.
Respondent's position at the venue hearing was that the parties had an agreement that A.S. would live with petitioner in Clinton County for one year and then return to live with respondent in Chicago, thereby making A.S. a permanent resident of Chicago. Petitioner denied the existence of the one-year agreement at the hearing on respondent's motion for a change in venue. Petitioner's attorney argued that if that agreement existed, his client would not have filed a petition to establish custody in Clinton County. The trial court accepted petitioner's contention that there was no one-year agreement to have A.S. reside with petitioner in Clinton County, and no testimony was taken on whether that agreement existed. In denying the motion for a change of venue, the circuit court specifically stated as follows:
"If I can address one issue, the child has been living for over afor a year in one location. To me that means this is where the child lives. I don't think that you can live in one location for a year and say the residence is in another location and that's the position. As much as I would love to refer this case to Chicago so I wouldn't have to decide what is going to be a very sad case, I can tell right now, I don't think I can. I am going to have to deny your motion for change of venue because the child has been in herefor a year[,] and on the issue of registering for school or things like that[,] those are issues that are not relevant to anything. The only issuethe only reason I am ruling the way I am is *128 because the child has been inin this county for 12 months, and I think that is basis for denying the motion to change venue."
Thus, the basis for the trial court's denial of a change of venue was the fact that A.S. lived in Clinton County during the year prior to the filing of the lawsuit.
The trial court had not been advised of all the facts at the time it made its ruling on the issue of venue, because petitioner was not forthright about the parties' agreement. However, even assuming, arguendo, that the circuit court was aware of the totality of the circumstances and the manner in which petitioner obtained physical custody of A.S. in Clinton County, the circuit court's ruling on the venue motion might have remained the same because the statute allows a custody action to be filed in either the county in which the child is a permanent resident or the county in which the child is found at the time of the filing (750 ILCS 5/601(b)(1)(ii) (West 2006)).
The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. Comprehensive Community Solutions, Inc. v. Rockford School District No. 205, 216 Ill.2d 455, 473, 297 Ill.Dec. 221, 837 N.E.2d 1, 11 (2005). Where the language of a statute is clear, we may not read into it exceptions that the legislature did not express, and we will give the statute effect as written. Comprehensive Community Solutions, Inc., 216 Ill.2d at 473, 297 Ill.Dec. 221, 837 N.E.2d at 12. We are to give undefined statutory terms their ordinary meaning. Comprehensive Community Solutions, Inc., 216 Ill.2d at 473-74, 297 Ill. Dec. 221, 837 N.E.2d at 12. As used in its ordinary sense, the word "or" is disjunctive and connotes an alternative, which indicates that the various parts of the sentence that it connects are to be taken separately. Elementary School District 159 v. Schiller, 221 Ill.2d 130, 145, 302 Ill.Dec. 557, 849 N.E.2d 349, 359 (2006). Accordingly, in the instant case, the case could have been filed in either the county in which the child was a permanent resident or the county in which he was found.
At the time petitioner filed his petition, A.S. was living in Clinton County, and thus, Clinton County was a proper venue. However, even though this ends our analysis on the first issue regarding venue, we think it important to set forth in detail the history of the parties. Petitioner's choice of Clinton County concerns us deeply in light of his original agreement with respondent to only keep the child for a year.
In the instant case, the parties met while attending college at Southern Illinois University in Carbondale. They had a romantic relationship, which culminated in the birth of A.S. By all accounts, petitioner lost romantic interest in respondent as soon as A.S. was born. The parties lived together for a few months, but at the end of the school year, respondent went back to the Chicago area with A.S. to live with her parents. Petitioner remained in Carbondale and finished his degree. He then moved back to Albers and lived with his parents.
To his credit, petitioner moved to Chicago in order to establish a relationship with his son. Respondent was not bitter or spiteful but encouraged the father-and-son relationship. Things went well for the next year, with both parties sharing physical custody and paying half of the day-care bills and petitioner giving respondent some money for food and diapers. However, in June 2006, petitioner lost his job and was forced to return to Albers for financial reasons. Respondent told petitioner she expected him to pay child support in his absence. Petitioner then came up with the idea of having A.S. live with him in Albers for the next year so that respondent would *129 finally be able to finish her undergraduate degree.
This was not an easy decision for respondent. She grappled with it, but after a time she came to realize that might be the only way for her to better her employment opportunities and be able to move out of her parents' home into her own home with A.S. At the hearing on respondent's motion for a change in venue, petitioner's attorney denied the existence of a one-year agreement for A.S. to live with petitioner in Albers and then return to Chicago. However, the evidence adduced at the custody hearing supports respondent's contention that the custody arrangement was merely a temporary one-year agreement during which A.S. remained a resident of Chicago.
At the hearing, petitioner specifically stated, "[It was not until January of 2007] when I informed her[]kind of modified plans in that I wanted [A.S.] to stay here." Petitioner also admitted that the parties' relationship has deteriorated since he changed the arrangement. Regarding the parties' relationship, petitioner specifically stated: "I would like it to be better than what it is. I mean it has soured over this process and since, you know[,] generally January of this year when I informed her or let her know that I would like to keep [A.S.] down here."
On cross-examination, respondent's attorney point blank asked petitioner what the agreement was in June 2006, and petitioner admitted there was only a one-year agreement, when he stated: "We had discussed that [A.S.] would come back with me for approximately a year. I kind of left it open[,] up in the air, you know, for modification or whatnot, but that was what was discussed." Respondent's attorney then asked, "Did you say, [']yeah, that's what we will do; the child will come back here in a year[']?" Petitioner replied, "I suppose." Petitioner's blatant disregard for the agreed-upon one-year plan is deeply disturbing, especially in light of respondent's ongoing commitment to allow petitioner to be a part of A.S.'s life and to do what she believed was in A.S.'s best interests.
Respondent is a resident of Cook County. The general rule is that the domicile of a minor child of divorced parents is that of the parent to whom custody has been granted. Crawley v. Bauchens, 13 Ill. App.3d 791, 795, 300 N.E.2d 603, 607 (1973), aff'd on other grounds, 57 Ill.2d 360, 312 N.E.2d 236 (1974). While the parties have never been married, it is clear that respondent had custody of A.S. when she returned to Hinsdale after the parties broke up and petitioner remained in Carbondale to finish his degree. Section 10-5(a)(3) of the Criminal Code of 1961, which pertains to child abduction, states, "It is presumed that, when the parties have never been married to each other, the mother has legal custody of the child unless a valid court order states otherwise." 720 ILCS 5/10-5(a)(3) (West 2006).
In the instant case, respondent allowed petitioner to establish a relationship with his son after petitioner moved to Chicago. Until he lost his job, petitioner had no plans to return to Clinton County. After much soul-searching, respondent agreed to allow petitioner to take A.S. to Clinton County, but only on a temporary, one-year basis. It is clear from the record that when the agreement was originally reached, neither party intended for A.S. to live in Clinton County for more than a year. In Illinois, once a residence is established, it is presumed to continue. A person only establishes a new residence if that person physically moves to a new home and lives there with the intent to make it his permanent home. Schwalbach v. Millikin Kappa Sigma Corp., 363 Ill. *130 App.3d 926, 932, 300 Ill.Dec. 788, 845 N.E.2d 677, 683 (2005).
In Schwalbach, the parents of Nicholas Schwalbach (Nick), who died in a fire at his Millikin University fraternity house, filed a products liability and wrongful death action in Madison County, where the parents lived, against the fraternity and the manufacturer and the distributor of a fire alarm. The defendants moved to transfer venue from Madison County, where Nick's estate was being administered, to Macon County, the county in which the fire occurred. The trial court denied the motion for a change of venue. This court affirmed, finding that Nick was a resident of Madison County at the time of his death, even though he lived at the fraternity house at the time of his death, specifically stating as follows:
"Prior to attending college, Nick unquestionably resided with his mother, Brenda, in Glen Carbon. Thus, he was a Madison County resident at that time. For the reasons discussed, we do not think the record contains any evidence to demonstrate that Nick had acquired a new residence. He was thus a Madison County resident at the time of his death." Schwalbach, 363 Ill.App.3d at 933, 300 Ill.Dec. 788, 845 N.E.2d at 683.
While petitioner contends the situation in Schwalbach bears no resemblance to the instant matter, we find that the situations are quite similar. A.S. was a resident of Cook County where his mother resided, even though he was living in Clinton County the year prior to the filing of the custody petition.
Petitioner also argues that because respondent made no effort to get her son back once she learned that petitioner was planning on keeping his son in Albers, A.S. became a resident of Clinton County. We disagree.
Petitioner first made his intentions known in January 2007. At this time, respondent had very few resources and was hoping that petitioner would comply with the parties' original one-year agreement. Respondent was still attending classes and working toward her degree, which she obtained in August 2007. She was not in a position to change the temporary arrangement. Throughout the year, respondent maintained regular contact with A.S. She visited every other weekend and called A.S. every night. To allow petitioner the ability to unilaterally modify the parties' temporary agreement and make it permanent would have a chilling effect on unmarried parents' incentive to work in the best interests of their child.
Respondent resided in the Chicago area with her son for well over two years after the parties' relationship soured in Carbondale. The evidence is compelling that she only allowed petitioner to take A.S. to Clinton County on a temporary basis for one year in order for her to be able to better her circumstances and finish her undergraduate degree. As her attorney argued at the venue hearing, if the parties did not have an agreement, A.S. would have remained with her in Chicago and respondent would never have been in Clinton County arguing about the custody of her son. With this history in mind, we now address the second issue raised by respondent.

II
The second issue raised on appeal is whether the trial court failed to consider the statutory factors and improperly granted physical custody to petitioner. Respondent contends the trial court erred in basing the custody decision solely on where A.S. was living at the time of filing. Petitioner responds that although the circuit court did not list the statutory factors *131 it considered, the circuit court sufficiently considered the best interests of the child and the statutory factors and properly granted primary physical custody to him. We find that judgment is against the manifest weight of the evidence.
A trial court has broad discretion in making custody determinations, and a reviewing court should only reverse if the determination is against the manifest weight of the evidence or it appears a manifest injustice has occurred. In re Marriage of Feig, 296 Ill.App.3d 405, 408, 230 Ill.Dec. 685, 694 N.E.2d 654, 656 (1998). Section 602 of the Act requires courts to determine custody according to the best-interest-of-the-child standard. 750 ILCS 5/602 (West 2006). All the relevant factors, including those enumerated in section 602, must be considered when deciding the child's best interest. Cooper v. Cooper, 146 Ill.App.3d 943, 945, 100 Ill.Dec. 627, 497 N.E.2d 805, 806 (1986). Section 602(a) of the Act (750 ILCS 5/602(a) (West 2006)) lists nine factors to be considered, but not all are relevant here. The trial court is not required to make specific findings regarding each section 602 factor, as long as evidence was presented from which the court could consider the factors prior to making its decision. In re Marriage of Stribling, 219 Ill.App.3d 105, 107, 161 Ill.Dec. 749, 579 N.E.2d 6, 8 (1991).
In granting custody to petitioner, the trial court specifically stated as follows:
"This case is sad in some ways, because both parents are very loving and concerned parents, and it would be in [A.S.'s] best interest if his parents were able to reside closer to each other.
However, this Court is aware of the job and employment situations, and each of these parents has a decent job that they enjoy. At this time, it's unlikely that either parent would be moving closer to the other parent.
This Court finds that since [A.S.] has primarily resided with his father since June of 2006, and that he is only four years of age, it's clear that his father's home has been his primary physical residence and that [A.S.] is very comfortable in that situation. Under these circumstances, this Court is naming [petitioner] as the primary physical custodian."
We agree with respondent that the trial court based its decision on circumstances arising from the fact that petitioner was the primary physical custodian in the year prior to the petition being filed. However, as previously pointed out, petitioner was the primary physical custodian because of an agreement he made with respondent to take A.S. to Albers for a year in order for respondent to be able to finish her undergraduate degree. The agreement was based upon what respondent believed to be in her son's best interests at the time. Respondent wanted to be able to provide a better life for A.S. Petitioner was able to finish his degree in Carbondale, while respondent moved back with her parents and took care of the parties' son. We agree with respondent that if we were to uphold the circuit court's order, we would discourage any mother from allowing her child to reside with the father for any period of time, even if it was in the child's best interest. While it appears that petitioner is a good father and we applaud his efforts to establish a relationship with his son, we cannot condone his actions in this case. The agreement that petitioner have primary physical custody was to be temporary. Petitioner initially denied that the agreement was temporary and misled the circuit court at the hearing on respondent's motion to transfer venue. A manifest injustice has occurred in this case, and we refuse to reward petitioner for his deceit *132 not only toward respondent but also toward the circuit court.
In additional support of our determination, we point out that in determining the best interest of the child, a court is directed to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." 750 ILCS 5/602(a)(8) (West 2006). In his report, the guardian ad litem expressly stated: "I am concerned with [petitioner's] negative impressions of [respondent]. [Respondent] thinks that communication will improve when the custody issues are decided."
It is clear that respondent has done everything possible, up until the time petitioner unilaterally changed the parties' agreement and told respondent he was going to file a petition seeking custody, in order to facilitate petitioner's relationship with A.S. Petitioner has not treated respondent with the same respect. Respondent testified that she felt like petitioner was trying to cut her out of her son's life. While petitioner would let A.S. talk to respondent, as soon as she was finished talking, the phone was disconnected. Respondent went for weeks at a time without talking to petitioner and did not know what was going on in her four-year-old son's life. Nevertheless, despite everything that occurred, respondent remains optimistic that communication between the parties will improve once the custody issue has been decided. Under these circumstances, we conclude that there is a better chance for both parents to take active roles in their son's life if respondent is the primary custodian.
A judgment is against the manifest weight of the evidence if an opposite conclusion is apparent or if the findings appear to be unreasonable, arbitrary, or not based upon the evidence. In re Marriage of Hefer, 282 Ill.App.3d 73, 80, 217 Ill.Dec. 701, 667 N.E.2d 1094, 1100 (1996). In the instant case, the circuit court's decision granting primary physical custody to petitioner is against the manifest weight of the evidence. The overall circumstancesin particular, petitioner's violation of the parties' one-year agreementsupport an award of primary physical custody to respondent. Accordingly, we hereby reverse the order of the circuit court of Clinton County and remand with directions for the entry of a new order granting primary physical custody of A.S. to respondent. Finally, we implore both parties to work together in the best interests of their child.

CONCLUSION
For the foregoing reasons, the judgment of the circuit court of Clinton County is hereby reversed, and the cause is remanded with directions.
Reversed; cause remanded with directions.
WELCH, J., concurs.
Justice CHAPMAN, dissenting:
I dissent only from that part of the opinion finding that the trial court's custody determination was contrary to the manifest weight of the evidence.
On appeal from a case such as this one, where the trial court has had the opportunity to hear firsthand the witnesses' testimony, we can only reverse the trial court if we conclude that the order is manifestly erroneous or results in a manifest injustice. In re Marriage of Willis, 234 Ill. App.3d 156, 161, 174 Ill.Dec. 633, 599 N.E.2d 179, 183 (1992). A trial court's custody determination must be given great deference because the trial judge has had the superior opportunity to observe the witnesses as they testified and is therefore in a far superior position to determine the best interests of the child. In re Marriage *133 of Quindry, 223 Ill.App.3d 735, 737, 166 Ill.Dec. 290, 585 N.E.2d 1312, 1314 (1992).
In this case, the majority concluded that the trial court's order was contrary to the manifest weight of the evidence and that the order was manifestly unjust.
Many witnesses were called to testify, including both parents. The court regarded the case as difficult, commenting that the case "is sad * * * because both parents are very loving and concerned parents." From the perspective that either choice would be a proper one, the guardian ad litem, after what appears from the record to have been an exhaustive interview and reporting process, was not able to recommend to the court one parent over the other parent.
In a case presenting such a difficult choice between two very viable options, the appellate court should defer to the trial court's discretion on the matter. After all, on appeal, we do not get to see the witnesses testify and judge their credibility. Especially in a close case, the reviewing court should greatly defer to the trial court's judgment. There is a strong and compelling presumption that the trial court's custody determination was correct. In re Marriage of Willis, 234 Ill.App.3d at 161, 174 Ill.Dec. 633, 599 N.E.2d at 183.
As cited in the majority opinion, the relevant portion of the court's order reads as follows:
"This Court finds that since [A.S.] has primarily resided with his father since June of 2006, and that he is only four years of age, it's clear that his father's home has been his primary physical residence and that [A.S.] is very comfortable in that situation. Under these circumstances, this Court is naming [the father] as the primary physical custodian."
The majority correctly indicates that the order appears to be based only upon the child's most immediate residency and his relative happiness while in this setting. There was no evidence that A.S. was unhappy when he lived with his mother in the Chicago area. The majority finds that this reliance solely upon A.S.'s most recent and current residency to form the basis for permanent custody being awarded to the father is erroneous. The majority finds support for its opinion in the "agreement" between the parties that A.S.'s residency in Albers, Illinois, was to be temporary in duration. The court states that the father violated this "agreement" and, thus, should not be rewarded for his wrongdoing.
Because the majority places such heavy emphasis upon this agreement, I turn to this issue. There appears to be little dispute about the understanding between the parties that A.S. would only temporarily reside in Albers, Illinois. What is in dispute, however, is the characterization of the father's change of heart. The mother arguesand, essentially, the majority agreesthat the father's change in focus was deceptive in nature. I find that evidence of deception is lacking. The only specific aspect of this alleged deception found by the majority occurred when the father "misled the circuit court" at the venue-motion hearing. The offensive claim appears to be found in the father's petition for temporary and permanent injunction filed in response to the mother's motion for a change of venue. This document was verified by the father and stated that the mother failed to return A.S. to the father's care as agreed upon at the conclusion of her summer visitation period and that she had "absconded with the parties' child." I agree that this characterization of the facts is unduly harsh and overdramatized the truth of the matter. There was no custody agreement in place when the mother was alleged to have hidden *134 A.S. away from his father. Additionally, the mother had just been served with papers stating that the father was seeking permanent custody of her child during the period of her summer visitation. By focusing upon this statement and inferring that the father denied the existence of a temporary custody arrangement, the majority misses the point. In finding that the trial court's order was contrary to the manifest weight of the evidence, the majority states, "The overall circumstancesin particular, petitioner's violation of the parties' one-year agreementsupport an award of primary physical custody to respondent." 334 Ill.Dec. at 99, 916 N.E.2d at 132.
There was no binding temporary custody agreement. As a matter of convenience and practicality, A.S.'s parents agreed to the change in residential location for their child. This was a valid option, allowing the mother to complete her college education. However, the agreement was informal and was not a binding agreement. The majority seems to believe that the father's suggestion that A.S. move to Clinton County and then his later statement that he would like to make the situation a permanent one were calculated and deceptive. This presumption completely discounts the probability that the father, emotionally, grew more attached to the child during the year they lived together and he could not bear the thought of returning A.S. to his mother's permanent care in Chicagoa fact that is borne out by the father's statement to the mother in January 2007 that he would like to make the custody arrangement permanent. Having such a change of heart does not have to be grounded in deception. I simply do not agree with the majority's position that the voluntary informal agreement was "violated" under these circumstances. Because the case was factually so close, it is quite difficult to argue that the trial court's ruling is contrary to the manifest weight of the evidence. However, by branding the father's behavior as deceptive, the majority strengthens its contention of manifest error and/or manifest injustice.
I respectfully dissent from the majority's determination that the custody order must be reversed.