2015 IL App (3d) 150553

Opinion filed December 21, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| CARMALITA YOUNG, | ) | Kankakee County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | Appeal No. 3-15-0553 |
| | ) | Circuit No. 13-D-154 |
| and | ) | |
| | ) | |
| BURTRANN YOUNG, | ) | Honorable |
| | ) | Adrienne W. Albrecht |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner Carmalita Young and respondent Burtrann Young both sought custody of their son, Zachariah, who was seven years old when the parties separated. The trial court awarded joint custody to Carmalita and Burtrann, ordered Burtrann have residential custody and Carmalita have visitation. Carmalita appealed the custody decision. We affirm.

¶ 2                                                FACTS

¶ 3    Petitioner Carmalita Young and respondent Burtrann Young were married in 1995. They lived in the marital home in Aurora until Carmalita took their son, Z.Y. and moved to her parents' home in Kankakee at the end of 2012. She filed a petition for dissolution of marriage in April 2013, and sought temporary custody of Z.Y. The trial court granted temporary custody to Carmalita and visitation to Burtrann. Burtrann counterpetitioned for a judgment for dissolution in February 2014, seeking sole custody of Z.Y. Burtrann also filed a motion for the appointment of a guardian *ad litem*, expressing concern over Carmalita's alleged interference in his relationship with Z.Y. The trial court appointed a GAL, who filed a report under seal.

¶ 4    The trial court and both parties interviewed Z.Y., who said he wanted to live with his father. He explained he was able to do more things at his dad's house, such as meet his friends and go to the park. He stayed mostly inside at his mom's house. He and Carmalita would play "swords" and sometimes go to the park or for a bike ride. He has his own room and bed at his dad's house but has to share a bed with his mom. He was worried about his dad's lack of job and money.

¶ 5    Burtrann testified that he had been involved in Z.Y.'s life during the marriage, attending one-third of his doctor's visits and picking him up from daycare. He wants Carmalita involved in Z.Y.'s life. He currently lived in a townhouse in Plainfield that he and Carmalita had owned as rental property. He and Z.Y. like to go to the park, where Z.Y. plays with his friends. They go to church on Sundays. He had recently lost his job due to downsizing but was actively pursuing employment. He had a bachelor's degree and was skilled in information technology. He did not discuss finances with his son.

¶ 6    Carmalita testified that she should have custody because she could provide a stable environment for Z.Y. She holds a master's degree in human services, with a counseling

2

concentration. She uses her professional skills to help Z.Y., who suffers from central auditory processing disorder. He was also diagnosed with gastroesophageal reflux disease (GERD) and his doctor offered diet suggestions and recommended various supplements to help with Z.Y.'s physical ailment. She and Z.Y. were currently living with her parents in the home in which she grew up but she planned to get her own house in the Bourbonnais area. Her job is flexible, allowing her to work at home a couple of days per week and to bring Z.Y. to the office if necessary. Z.Y. attends daycare after school. She and Z.Y. engage in various types of play, including "swords" and videogames. They attend church on Sundays.

¶ 7       Carmalita enrolled Z.Y. in school, daycare, and basketball without discussing them with Burtrann. She took Burtrann off the daycare list and he is not allowed to call Z.Y. at daycare, visit him there, or pick him up early from there for visitation. Carmalita would not send Z.Y.'s homework with him to his father's house. She allows Burtrann to call Z.Y. between 7 and 7:30 p.m. but ended their Skype sessions because she believed it was an invasion of her privacy. Carmalita recognized Burtrann's parenting strengths but believed that she could offer Z.Y. a more rounded upbringing and provide a more stable environment than his father could. In her view, Burtrann failed to establish proper boundaries and tried to be Z.Y.'s friend more than a parent. She acknowledged Z.Y. was familiar with his dad's townhouse. Although she initially asked for sole custody, she believed joint custody would be a better option.

¶ 8       Kathleen Fuhrmann, the GAL, testified. Z.Y. loved both his parents and was very distressed about their divorce, wishing they would reconcile. He was comfortable in both households but told her repeatedly he wanted to live with his father. In her view, Burtrann was better able to understand Z.Y.'s needs and provide a balanced lifestyle. She considered Carmalita's schedule, which she described as "highly structured," as too rigid for Z.Y. While the

3

environment with his mother was highly supportive, Z.Y.'s special needs required that he be allowed unstructured time to engage in physical activity. Fuhrmann expressed concern that Carmalita's rigidity also negatively influenced Z.Y.'s ability to connect with his father. Other concerns were with Carmalita's living situation, where she and Z.Y. shared a small room and bed, and the lack of private space for Z.Y. She recommended residential custody be awarded to Burtrann.

¶ 9    The trial court announced its findings in February 2015, awarding Carmalita and Burtrann joint custody of Z.Y., with residential custody to Burtrann and visitation for Carmalita. The trial court acknowledged Carmalita's parenting capabilities but considered that she systematically attempted to exclude Burtrann from Z.Y.'s life. The trial court pointed to instances where Carmalita called the police, her failure to name Burtrann as a parent at Z.Y.'s daycare, enrolling Z.Y. in extracurricular activities that took place during Z.Y.'s visits with his father without consulting Burtrann as examples of Carmalita excluding Burtrann. Noting the importance of the involvement of both parents, the trial court determined the only way to achieve that involvement was to order joint custody with Burtrann as the physical custodian. The trial court issued a judgment for dissolution in April 2015, providing for custody pursuant to its oral finding. Carmalita appealed.

¶ 10                                   ANALYSIS

¶ 11    On appeal, the issue is whether the trial court erred when it awarded residential custody to Burtrann. Carmalita argues that the trial court failed to consider Z.Y.'s need for continuity and stability and placed too much emphasis on Z.Y.'s preference to live with his father when it ordered that Burtrann be the residential parent.

¶ 12	The trial court decides custody according to the best interest of the child. 750 ILCS 5/602(a) (West 2012); *In re Marriage of Smith*, 2013 IL App (5th) 130349, ¶ 9. In making a custody determination, the trial court considers a number of factors, including: (1) the parent's or parents' wishes regarding custody; (2) the child's wishes; (3) the child's interaction and interrelationship with his parents; (4) the adjustment of the child to his home, school and community; (5) the mental and physical health of all involved individuals; (6) physical violence or the threat of it by the potential custodian, directed at the child or another person; (7) ongoing or repeated abuse toward the child or another person; and (8) each parent's ability and willingness to foster the child's relationship with the other parent. 750 ILCS 5/602(a)(1)-(8) (West 2012); *In re Marriage of Lonvick*, 2013 IL App (2d) 120865, ¶ 33. The trial court is in the best position to judge witness credibility and determine the child's best interests. *Lonvick*, 2013 IL App (2d) 120865, ¶ 33 (quoting *In re Marriage of Ricketts*, 329 Ill. App. 3d 173, 177 (2002)). We will not disturb a trial court's custody determination unless it is against the manifest weight of the evidence. *In re Marriage of Apperson*, 215 Ill. App. 3d 378, 383 (1991).

¶ 13	The best interest factors support the trial court's award of residential custody to Burtrann. Both parents wanted custody of Z.Y., so this factor favors neither Carmalita nor Burtrann. Z.Y.'s parents love him and each would provide a stable and safe environment for their son. As to the second factor, Z.Y. expressed his preference to live with his father. He enjoys his own room there with a big bed. He is close to the park and his friends. The third factor is the child's interaction and interrelationship with his parents. Z.Y. interacts well with his parents and enjoys a close bond with both of them. His relationship with his father is more aligned with Z.Y.'s needs and wishes. Carmalita's lack of flexibility affects her relationship with Z.Y. in that she fails to recognize his desire for physical activity and the importance of Burtrann in Z.Y.'s life.

This factor favors Burtrann. The fourth factor also favors Burtrann. Z.Y. adjusted to his move to Bourbonnais and the GAL expressed no concerns regarding his transfer to a school near his father's house. Z.Y. has friends and activities at both his father's and his mother's houses. As a result of his mother moving them in with her parents, Z.Y. must adjust his activity level to comply with the desires of his grandparents. In addition, both Z.Y. and the GAL expressed concern about the living situation where he shared a room and a bed with Carmalita. Despite Carmalita's attempt to introduce evidence of domestic violence on the part of Burtrann, the trial court specifically found that factor to be inapplicable and struck Carmalita's offer of proof of physical abuse. There are no mental or physical health issues with either parent.

¶ 14        The final relevant factor is the ability and willingness of each parent to foster the child's relationship with the other parent. Contrary to Carmalita's claims, the trial court did not consider Z.Y.'s preference the determinative factor. Rather, the trial court emphasized Carmalita's "systemic effort to exclude Burtrann" as a key consideration in awarding custody to Burtrann, reasoning it was the only way to ensure the active involvement of both parents. See *In re Marriage of Spent*, 342 Ill. App. 3d 643, 652-53 (2003) (mother's conduct in denying child's visitation and phone contact with father and in disparaging father in front of child supported award of residential custody to father, where evidence demonstrated mother failed to foster a close relationship between child and his father); *In re A.S.*, 394 Ill. App. 3d 204, 214 (2009) (father's disrespect to child's mother, unilateral change of the parties' custody agreement, and attempt to obtain sole custody of child supported trial court's award of residential custody to mother, who would better facilitate relationship between child and his father); *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 56 (mother's attempts to thwart father's relationship with the child proper factor in custody transfer).

¶ 15 Like the parents in *Spent, A.S.*, and *Debra N*., Carmalita was incapable or unwilling to foster a relationship between Z.Y. and his father and took active steps to limit Burtrann's involvement in Z.Y.'s life. Examples of Carmalita's exclusive conduct included making decisions about Z.Y. without Burtrann's knowledge or input, refusing to list Burtrann as Z.Y.'s parent at daycare, and maintaining an inflexible schedule and attitude. The GAL opined that Carmalita's inability to be flexible impacted Z.Y.'s connection with his father. The trial court likewise expressed concern that Carmalita would continue to engage in conduct contrary to Z.Y.'s best interest in having Burtrann actively involved in his life. This factor, and the majority of the best interest factors, favor Burtrann as the custodial parent. We do not find that the trial court's determination to award residential custody to Burtrann be an abuse of discretion.

¶ 16 For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 17 Affirmed.

7